## BRADY v. HIDALGO COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. 12 et al.

No. 8945.

Court of Civil Appeals of Texas. San Antonio.

Dec. 14, 1932.

Rehearing Denied Jan. 25, 1933.

Brown & Bader, of Edinburg, for appellant.

West & Hightower, of Brownsville, and D. W. Glasscock, of Mercedes, for appellees.

SMITH, J.

On December 3, 1929, the board of directors of the Hidalgo county water control and improvement district No. 12 employed P. Brady as its purchasing agent and office manager, agreeing to pay him $400 per month for his services as such; thereafter, on February 11, 1930, said board further employed Brady as "assistant manager" of the district, at an "additional salary of $250 per month," or an aggregate salary of $650 per month as "purchasing agent and office manager" and "assistant manager"; and thereafter, on March 3, 1930, the board still further employed Brady as tax assessor and collector of the district at an additional salary of $100 per month, or an aggregate salary of $750 per month as "purchasing agent and office manager," "assistant manager," and "tax assessor and collector."

Brady entered upon the several employments and performed the pyramided duties at the pyramided salaries to the apparent satisfaction of the board of directors and at no great effort but considerable expense to himself, until May 1, 1931, when the personnel of the board of directors was changed, whereupon shortly thereafter his employment was not only terminated, but was repudiated in toto by the new board, who ordained the repudiation and cancellation of vouchers previously issued (but not paid) to Brady. The latter thereupon sued the district for the amount of those vouchers, plus further amounts due him for his salaries under the employment which had not been covered by voucher.

The district defended upon the grounds, as stated in its brief: "That the entirety of the indebtedness sued on was payable out of a construction fund which had never existed, failed to show that the amounts sued for were necessarily incurred in the creation and establishment and maintenance of the district, failed to show that either of the three claimed employments of appellant were necessary for the proper handling of the business and the operation of the district, its plant and/or improvements, and failed to show that appel-lant was legally qualified to hold the office of tax assessor and collector. Further, appellees plead defensively that the indebtedness sued on was payable exclusively out of a construction fund and neither a construction fund nor a maintenance fund had ever existed, and that no construction bonds of the district had ever been sold; that the claimed indebtedness sued on was not at all incurred in the creation and establishment and the maintenance of the district; that the district had no business nor operations, nor plants, nor improvements, and had never had any of such, and appellant's claimed indebtedness was not, and could not have been, necessary for the proper handling of such, all of which appellant had always known; that appellant, together with the previous directors of the district, together with other unknown persons, had formed, and all had become members of, a general conspiracy to loot and defraud the district, and all of appellant's claimed indebtedness originated in, and resulted from, such general conspiracy; and that, irrespective of such general conspiracy, the employment by such previous directors of appellant for the positions and for the salaries as stated was a gross abuse of discretion on the part of such directors, which appellant well knew; that there had been a total absence as well as a complete failure of consideration for the indebtedness claimed and by reason of the foregoing appellees denied liability for anything."

The jury found that the district directors "grossly abused" their discretion in engaging Brady in each of said employments, and that Brady's claim, except for salary as purchasing agent and office manager, were "results of a conspiracy to which he was a party." The jury further found, upon the theory of quantum meruit, that $1,159.83 would reasonably compensate Brady for his services in all the several employments mentioned. Under the contract sued on, if valid, he was entitled to recover $13,993.33, according to his testimony. Upon the jury findings, the trial court rendered judgment denying any recovery to Brady, who has appealed.

It is conceded that the district was regularly created and organized. Its organization was decreed by a practically unanimous vote of the land-owning taxpayers residing within the district, who by a like majority elected the members of the board of directors which employed Brady, and adopted a proposal to issue $5,500,000 in bonds to put the district in operation. Those bonds were issued accordingly, but by that time the current financial depression set in and they could not be sold. They have never been sold.

There was no evidence to support the jury finding that Brady's claims were "results of a conspiracy to which he was a party." The record shows, rather, that appellant was regularly employed by the board of directors in.

their apparent belief that the district would be correspondingly benefited by his services, on account of his apparently high standing as a business man of past large affairs, experience, and training. They particularly thought he would be of great value in advantageously disposing of the district bonds, in a market which had already begun to disintegrate.

Appellant had never heard of the district at the time of his first appointment, knew nothing whatever of its affairs or status or prospects, was acquainted with only one of the directors and with him only slightly. The board had appointed him upon the recommendation of one of the promoters of the district acting in Brady's behalf, but without consulting him.

The record likewise shows that appellant accepted and entered into the employment in good faith, performed such of the duties as could be performed under the existing conditions, and held himself in readiness to do whatever else might come to hand to be done by him for the district.

It is true that because of the failure to dispose of the bonds there was but little that could be done by appellant in his several employments, but that was due to no negligence or fault of his own.

 Nor was there any support in the evidence of the jury finding that the district directors "grossly abused their discretion" in employing Brady as they did. As a matter of law, it was quite beyond the province of the jury to say whether appellant should have been employed by the district, or to fix his salary. The board of directors, and not this jury, were elected by the people to determine those very questions.

It is true that the action of the board of directors in building and equipping an office and employing appellant and perhaps others proved to be premature and improvident, but apparently it so turned out only because of the unsalability of the bonds due to the financial depression. It is easily conceivable that but for that wholly unexpected calamity the district would have gone normally into operation and that this and like claims would never have been questioned or repudiated or litigated. It is easily conceivable that the board of directors of the district were justified by existing conditions in making haste to lay the groundwork for their activities, and that the interests of the district could be best served by employing an able, experienced, and trained business man to take charge and direct those activities. Certainly the directors were elected by the taxpayers (who were to pay the district's bills) for the very purpose of determining matters of policy such as that involved, to select and employ the necessary secretarial and managerial assistants, and to fix their com-

pensation. Those were purely administrative functions delegated to the directors by law and the vote of the taxpayers, and the courts may not usurp those functions, or interfere with the exercise thereof by those elected thereto except in extreme situations not presented here.

In short, the questions of the necessity for appointing a purchasing agent, an office manager, an assistant general manager, and a tax assessor and collector, or of combining all those functions in one employee, as well as the question of fixing the compensation of such employee, were to be determined by the board of directors elected by the taxpayers of the district with special reference to their fitness therefor, and not by a jury or a court. And the decision of the directors in such matters is conclusive, unless, indeed, it appears as a matter of law that the directors have acted clearly outside the scope of their lawful authority, and their decision is so grossly unreasonable or capricious or arbitrary as to amount to fraud as a matter of law. Certainly no such case is proven here in so far as it concerns the employment of appellant.

 Of course, the district has no funds, no assets, no income, no source of income, no present prospects of income. It can procure none except through the sale of its bonds, and of course appellant accepted this employment and entered into this contract with full notice that his pay must come out of the proceeds of the bond issue. For it seems obvious the district cannot levy taxes except to provide interest upon its bonds and sinking fund for the retirement of its bonds. Its operating expenses, after construction expenses, must come from water rentals and service charges, which cannot precede, but can only follow, actual irrigation operations. And a judgment for appellant in this case would constitute a very doubtful asset, for its payment would have to await the sale of the district bonds, at present but a remote and doubtful contingency. But with this the law is not concerned, and equity does not weep for appellant, who took these risks knowingly. The courts will concern themselves only in establishing the legal rights and remedies of the parties, and in prohibiting repudiation of lawful debts by individuals or corporations, public or private.

 It is obvious that the judgment must be reversed. The case does not appear to be one for rendition here. The jury findings were manifestly without material support in the evidence, and obviously resulted from improper considerations. The record discloses much testimony that should have been excluded as being irrelevant to any legitimate issue in the case, such as the testimony as to the alleged machinations of its promoters before and after the organization of the district. Much fun was made by appellees of the kind and number of household, office, and

kitchen articles purchased by the board for use in the temporary quarters of the district. Appellees likewise with more or less levity sought to show that the first board of directors, who employed appellant, were ignorant illiterate puppets of one Franklin and his cronies, who promoted the district, and this line of attack, skillfully conducted by able and astute counsel, apparently prejudiced appellant's case. But whether that point was established or not, those directors were elected by the taxpayers of the district, who likewise elected the present complaining board, with practical unanimity, and presumably with full knowledge of the shortcomings, if any, of those for whom they voted. And in no possible event could appellant be charged with those shortcomings, for at the time of the election of the directors and of his appointment he had never heard of them or of the district. All such matters should have been excluded from evidence, since appellant was responsible for none of them, while their admission was clearly prejudicial to him, and no doubt induced the groundless findings of the jury.

So far as the present record shows, the district lawfully incurred the obligations herein sued upon. It accepted the resulting benefits, slight though they proved to be, and appropriated the same to its own uses, and yet seeks to repudiate those obligations. It is obvious that no individual or private corporation would be permitted to thus escape its solemn obligations, and we see no reason why public or quasi public corporations should not be held as rigidly, if not more rigidly, to such obligations.

The judgment is reversed, and the cause remanded.