THE STATE OF TEXAS EX REL. D. C. ABNEY ET AL. V. SAM L. MILLER ET AL.

No. 7444. Decided June 7, 1939.
Rehearing overruled July 19, 1939.
(128 S. W., 2d Series, 1134.)

*Wm. McCraw,* former Attorney General, *Gerald Mann,* Attorney General, *Wm. C. Davis,* former Assistant *Attorney General, Albert S. Rollins,* Assistant Attorney General, *Strickland, Ewers & Wilkins,* and *Hill, Greer & Franki,* of Mission, and *Brooks, Napier, Brown & Matthews,* of San Antonio, for plaintiffs in error.

The interim bonds were unconstitutional and void because they authorized a greater burden on the district than the bonds voted; because they authorized a debt in excess of the amount voted, and at the time the bonds were voted the statute which authorized them had been repealed. Harding v. Pearson, 48 S. W. (2d) 964; Fort v. Moore, 33 S. W. (2d) 808; McAnally v. Person, 57 S. W. (2d) 945.

*Kelly, Looney & Norvell,* of Edinberg, *Frank·H. Crane* and *J. W. Ragsdale,* of Victoria, and *Charles E. Thompson, Mc-Daniel & Catlett,* of McAllen, for defendants in error.

*A. J. Wirtz,* of Austin, and *John D. McCall* and *Millard Parkhurst,* both of Dallas, filed briefs as amici curiae.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion of the Court.

This suit was instituted by the State of Texas through the Attorney General upon the relation of D. C. Abney and other citizens owning lands lying within the claimed area of Hidalgo County Water Control and Improvement District No. 12, against Sam L. Miller and others and against the said district, the purpose of the suit being to procure a decree that the district is a nullity and a decree cancelling certain bonds hereinafter to be described. In their petition the plaintiffs prayed for a temporary injunction restraining the defendants from selling or otherwise disposing of certain bonds alleged to be in their hands pending a final determination of the cause on its merits. The temporary injunction as prayed for was granted, but on appeal was dissolved by the Court of Civil Appeals. 115 S. W. (2d) 1027.

After the granting of the application of the State for writ of error, this Court, upon motion of the State, through its Attorney General, entered its order continuing the temporary injunction in force pending its further orders.

We do not find it necessary to set out, or even to summarize, the allegations of the lengthy petition filed in the trial court. The sole question before us for decision is whether the temporary injunction should remain in force pending a trial of the case on its merits, and since we have determined that there is, at least, one ground upon which it should remain in force, it is unnecessary to consider whether other grounds might exist. We question whether the allegations are sufficient to challenge the legal existence of the district, but deem it unnecessary to write on that phase of the case in this proceeding. We approach the decision of the case in its present form upon the assumption, but without deciding, that the district has a legal existence. It does not follow, of course, that, because the district may have legal existence, bonds issued by it are valid.

The right of the Attorney General to maintain this suit for the purpose of inquiring into the validity of the bonds, except as that question might be·incidental to a suit challenging.

the validity of the creation of the district itself, is challenged. In disposing of that question we are not called upon to decide the question of whether or not the express authority given to the Attorney General to approve these bonds and certify as to their validity carries with it, by reasonable implication, the authority to maintain a suit in the name of the State of Texas for the cancellation thereof. This for the reason that we find express authorization in the statutes under which the district was organized and the bonds voted for the bringing of such a suit by the Attorney General. Art. 7880-25a reads as follows:

"It is the intent hereof that Sections 18 and 19 of this Act, and all amendments thereto now effective, or hereafter to be adopted, shall afford all interested persons adequate and exclusive opportunity to protest the creation of a district, and thereafter, save as hereinafter provided, no suit shall be permitted to be instituted in any court of this State contesting the validity of the formation and boundaries of a district created hereunder, or contesting any bonds or other obligations created hereunder, or contesting the validity of a contract with the United States, or of the authorization thereof by the district; It is expressly provided, however, that all such matters may be judicially inquired into and determined in any suit brought by the State of Texas, through the Attorney General, upon his own motion, or upon motion of any person affected by the existence or plans of the district, upon good cause shown, except in such cases as are, or may be, provided by other provisions of this Act, or by the Constitution of Texas."

■ It is pointed out that this article refers to Sections 18 and 19, which relate to the creation of a district, and do not relate to the voting or issuance of bonds, and the argument is made that the Legislature could only have had in mind in enacting same the making of an inquiry into the validity of the creation of the district itself, and, as a necessary sequence thereto, into the validity of the bonds issued by the district, which would naturally fall with the falling of the district. We cannot thus limit the operation of the statute. The express provision is that "all such matters" may be inquired into. One of the "matters" thus referred to is the contesting of the validity of a contract with the United States or of the authorization thereof by the district, and another such "matter" is the contesting of bonds or other obligations "created hereunder." The construction insisted upon would render these two provisions or matters surplusage and give to them no meaning

whatever, for bonds issued by the district and contracts made by it would naturally fall with the falling of the district itself. It is further to be observed that the article provides that suit may be brought upon motion of any person affected, not only by the existence of the district, but by its plans as well. We construe the article as a grant of express authority to the Attorney General to maintain this suit as brought for the cancellation of these bonds on the ground of their alleged invalidity, regardless of whether the petition is sufficient to challenge the legal existence of the district itself. In other words, the Attorney General might admit the validity of the creation of the district and still maintain a suit for the cancellation of the bonds upon allegations of their invalidity.

■ Constitutional authorization for the creation of districts like the one here involved is contained in Article 16, Sec. 59, of our State Constitution. The applicable statutes enacted pursuant to such authority are Vernon's Civil Statutes, Title 128, ch. 3A, Articles 7880 et seq. These statutes make provision for the issuance of three classes of bonds. First, preliminary bonds, the sale of which is designed to furnish funds to make preliminary investigations; second, construction bonds, designed to furnish funds for the construction of irrigation facilities; and third, interim bonds, designed to make readily available funds for engineering and other expenses arising after construction bonds have been voted and before they are sold. The bonds involved in the present litigation are of the third class. By the express provision of the Constitution authorizing the creation of these districts and the issuance of bonds by them. (Art. 16, Sec. 59(c),) the Legislature is forbidden to authorize the issuance of any bonds unless such proposition shall first be submitted to the qualified taxpaying voters of the district.

The statutes, (Articles 7880 et seq., Vernon's Civil Statutes), provides that preliminary bonds and construction bonds must be voted upon. There is no provision for a separate vote upon interim bonds. If, as contended, these bonds create an indebtedness against the district in addition to that authorized by the construction bonds and are not voted upon, they are obviously void, because in contravention of the express language of the constitution above referred to. A consideration of the statutes relating to these bonds has led us to the conclusion that no additional indebtedness against the district is created by their issuance. They constitute, in effect, a method of making readily available a portion of the proceeds of the sale of construction bonds in order that the project for which the district was formed may proceed without delay. The right to

issue such bonds in accordance with the terms of the statutes is a right flowing from the right to issue construction bonds. According to the allegations, at the time the construction bonds were voted, there was in effect a statute, (Art. 7880-84a, Vernon's Civil Statutes, later amended,) authorizing a district which had voted construction bonds to issue interim bonds in an amount equal to ten per cent of the principal amount of the construction bonds which had been voted and not sold. The right so to issue said bonds was a right running with, and attached to the construction bonds. When the district voted on the proposition of the issuance of construction bonds the provisions of the applicable statutes became a part of the proposition voted upon. San Saba County v. McCraw, 130 Texas 54, 108 S. W. (2d) 200.

■ When the voters of the district indorsed the proposition of issuing construction bonds in the principal sum of $5,500,-000, they also voted to authorize the issuance of interim bonds in the amount and upon the terms then prescribed by statute. They did not authorize an indebtedness of $5,500,000 represented by construction bonds and an additional indebtedness represented by interim bonds, but they did authorize the issuance of interim bonds as a convenient method of procedure pending the sale of the construction bonds, which interim bonds were to be discharged by the taxes levied in support of the construction bonds and the proceeds of the sale of the construction bonds. We overrule the contention that the statute authorizing the issuance of interim bonds contravenes the constitutional provision above referred to, which denies to the Legislature the authority to authorize the issuance of bonds without a vote of the district. We hold that interim bonds, when issued in accordance with the statute existing at the time the construction bonds are voted, are themselves authorized by the voters.

■ But we do not hold that the interim bonds under attack were validly issued. The election by which the district authorized the issuance of $5,500,000 of construction bonds was held on March 14, 1930. At that time the statute, Article 7880-84a, authorized the issuance of interim bonds in an amount not to exceed ten per cent of the principal amount of the unsold construction bonds. The statute further provided that such interim bonds should mature not later than five years from the date of their issue. As above stated, the voters at that election authorized the issuance of interim bonds in the amount and upon the terms provided by that statute. They did not

authorize the issuance of such bonds in any greater amount than, or upon any terms different from those provided therein. After the election authorizing the issuance of construction and interim bonds, an amendment of Article 7880-84a of Vernon's Statutes became effective authorizing interim bonds in an amount not to exceed 25 per cent of the principal amount of the unsold construction bonds, and providing that such bonds should mature not later than ten years from the date of their issue. The amendment became effective April 9, 1930. Acts 41st Legislature, Fifth Called Session, ch. 31, p. 163. The bonds here involved were issued the day after the amendment became effective. According to the allegations, they were issued to an amount of more than twenty per cent of the principal amount of the construction bonds and matured ten years from the date of their issuance. Such bonds were not authorized by the voters.

We do not hold that Article 7880-84a, as amended, authorizing the issuance of ten-year interim bonds to an amount of 25 per cent of the construction bonds, is unconstitutional. That question is not involved. What we hold is that the amendment may not be given retroactive effect, but is applicable only to bonds voted after its effective date. The validity of interim bonds, as of all other bonds, must be tested by the law as it existed when their issuance was authorized. While interim bonds do not operate to create an additional indebtedness against the district, they are nevertheless bonds of the district and can be issued only in accordance with the statutes as they existed when they were authorized. By authorizing the issuance of $5,500,000 of construction bonds, the voters authorized the governing authorities of the district to issue five-year interim bonds to an amount equal to ten per cent thereof and to hypothecate construction bonds to the extent of 110 per cent of the amount of the interim bonds as security for the payment of the latter. It was a valuable right given them by law to determine the amount of construction bonds which could be hypothecated and the length of time for which they might be hypothecated. Having determined by their vote the terms and conditions upon which interim bonds could be issued and construction bonds could be hypothecated, the officers of the district could not thereafter impose different terms and conditions. The petition is sufficient to allege that the voters authorized the issuance of five-year interim bonds to the amount of ten per cent of the construction bonds, and that such bonds were not issued, but instead there were issued ten-year bonds to an amount in excess of twenty per cent of the

construction bonds. We, therefore, conclude that the validity of such bonds was sufficiently put in question to authorize the trial court to grant the temporary injunction.

It is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court June 7, 1939.

Rehearing overruled July 19, 1939.