## MILLER et al. v. STATE ex rel. ABNEY et al.

### No. 2441.

Court of Civil Appeals of Texas. Waco.

Oct. 30, 1941.

Rehearing Denied Nov. 26, 1941.

Dan Moody, of Austin, Kelley & Looney and L. C. McLean, all of Edinburg, Frank H. Crain and J. W. Ragsdale, both of Victoria, and Chas. E. Thompson, E. A. McDaniel, and J. E. Leslie, all of McAllen, for appellants.

Gerald C. Mann, Atty. Gen., Clarence E. Crowe, Asst. Atty. Gen., Brooks, Napier, Brown & Matthews, of San Antonio, and Strickland, Ewers & Wilkins, Orville Cox, and Hill, Greer & Franki, all of Mission, for appellees.

HALE, Justice.

This proceeding was instituted in the nature of a quo warranto by appellee, the State of Texas, acting through its Attorney General and upon the relation of D. C. Abney and twenty other owners of land situated in Hidalgo County Water Control and Improvement District No. 12, hereinafter referred to as the District. Leave having been granted, the suit was filed originally in the District Court of Hidalgo County on September 3, 1937, and was prosecuted against O. O. Norwood and others as alleged conspirators, against the District and its board of directors, and against Sam L. Miller and ten other holders of interim bonds issued by the District amounting to the total aggregate sum in principal and interest of approximately $1,000,000. The action was grounded upon extensive allegations of illegality, fraud and collusion in the creation of the District and in the subsequent issue and flotation of the bonds in controversy. Its primary purpose was to procure a judgment decreeing the District to be a nullity and cancelling said bonds and interest coupons.

After notice and hearing, the trial court granted a temporary injunction restraining the holders of the bonds from selling or disposing of the same pending a trial of the cause on its merits. Appeal to the Court of Civil Appeals for the Fourth Supreme Judicial District resulted in an order reversing the judgment of the trial court and dissolving the temporary injunction. Miller v. State ex rel. Abney, 115 S.W.2d 1027. Upon writ of error to the Supreme Court, the judgment of the Court of Civil Appeals was reversed and that of the trial court affirmed. State ex rel. Abney v. Miller, 133 Tex. 498, 128 S.W.2d 1134.

On September 4, 1939, at the request of defendants and over the objection of plaintiff, the case was transferred into the District Court of Willacy County, where it was later tried on its merits before the court below without a jury and resulted in judgment as follows: (1) Decreeing that the bonds in controversy are void, invalid and cancelled, and directing the parties to the suit to surrender said bonds to the clerk of the court; (2) permanently enjoining the defendants from setting up or asserting any rights under said bonds and interest coupons, or from delivering the possession thereof to any person other than the clerk of the court; (3) making permanent the temporary injunction theretofore issued in said cause; (4) setting aside a prior judgment rendered by the District Court of Hidalgo County in a certain cause styled Montalvo vs the District et al.; and (5) denying all relief sought by all parties except as therein expressly granted, including specifically the relief prayed for by plaintiff seeking the dissolution of the District. From this judgment on the merits, Sam L. Miller and seven other defendants duly perfected their appeal to the Court of Civil Appeals at San Antonio and, for sufficient reasons not necessary to here relate, the appealed cause has now been properly transferred into this court for decision.

As grounds for reversal of the judgment appealed from, appellants advance eight propositions of law which are submitted under eight assignments of error. Some of the propositions and assignments are prop-

erly grouped and presented together. The first two assignments, which in reality embrace all of the others, complain of the judgment of the trial court decreeing the bonds to be void, invalid and cancelled, because appellants say the pleadings and evidence are wholly insufficient to support the same. The third, fifth, sixth and seventh assignments relate to the prior judgment of the District Court· of Hidalgo County in the case of Montalvo vs the District, presenting the contentions, respectively, that: (1) The judgment in the prior case is res adjudicata of the issues in the present case; and (2) the court erred in setting aside said judgment because (a) the same upon its face was valid and there was no evidence showing it was procured by fraud, and (b) since the attack on said judgment was direct, the action in that regard was barred by the four years statute of limitation. The fourth assignment presents the contention that the pleadings and evidence showed that the bonds in controversy were valid to the extent of 55/65ths of the total amount thereof, and when each bond is reduced in that proportion, then each is valid, and since appellants indicated their willingness to accept such reduction, the court should have validated each bond for such reduced amount. The eighth and last assignment presents the defense of laches.

The pleadings of the parties are too extensive to be here set forth even in the briefest summary, consisting as they do of more than 100 typewritten pages in the transcript. Appellants do not specifically challenge the sufficiency of the pleadings of appellee in any particular and hence we shall not discuss the same further than to say that in our opinion they are sufficient to support the judgment appealed from upon any theory tendered by the evidence. The pleadings on behalf of appellants are likewise adequate to raise the contentions presented on this appeal.

■■ The evidence in the case is also voluminous and involved. The transcript does not contain any findings of fact or conclusions of law by the trial court, and there is no showing of request by either party for the same. Therefore, we must presume that the trial court found every issuable fact raised by the pleadings and tendered by the evidence in support of the judgment. Furthermore, we must assume upon this state of the record that there was sufficient evidence to support every fact essential to sustain the judgment, until the contrary is made to appear. Articles 2247 and 2247a, Vernon's Texas Annotated Civil Stats.; Reed v. Brewer, 90 Tex. 144, 37 S.W. 418; Humphrey v. Harrell, Tex.Com. App., 29 S.W.2d 963; Davis v. Magnolia Petroleum Co., 134 Tex. 201, 134 S.W.2d 1042; Hart v. Huie, Tex.Civ.App., 15 S.W. 2d 654, error dismissed; Crawford v. Tramonte, Tex.Civ.App., 36 S.W.2d 269, error dismissed; Murphy v. Dilworth, Tex.Civ. App., 129 S.W.2d 418, error dismissed; Gibson v. Henderson, Tex.Civ.App., 136 S. W.2d 634.

The District was created on December 3rd and confirmed at an election held on December 28, 1929, pursuant to the provisions of Section 59, Article XVI of the Constitution of Texas, Vernon's Ann.St., and of Article 7880—1 et seq. of Vernon's Texas Annotated Civil Statutes. Its territorial area embraced approximately 66,000 acres of land in Hidalgo County. At an election held on March 14, 1930, the voters of the District authorized the issuance of construction bonds in the principal sum of $5,550,000, to be payable from the proceeds of a tax to be levied against said land. Under the provisions of Article 7880—84a, Acts 1929, 1st C.S., Ch. 82, § 1, as the same existed at the time of said election, the authorization for the issuance of construction bonds as aforesaid operated as authority for the issuance of interim bonds to mature within five years from the date of their issue, in an amount not to exceed the sum of $550,000, or ten per cent of the principal amount of unsold construction bonds. On April 9, 1930, an amendment of the last mentioned article became effective, Acts 41st Leg., 5th C.S., Ch. 31, p. 163, which provided in substance that interim bonds might be issued in an amount not to exceed twenty-five per cent of the principal amount of unsold construction bonds, to mature. not later than ten years from date of their issue. Thereafter, on April 28, 1930, but without the holding of any further election of any kind, the directors of the District entered an order authorizing the issuance of $1,150,000 of interim bonds to be numbered from 1 to 1,-150, inclusive, each in the principal sum of $1,000, each to be dated April 10, 1930, to bear interest at the rate of six per cent per annum, payable semi-annually, said bonds to become due on April 10, 1940, but callable prior to maturity at the option of the directors of the District. It was specifically recited in the order aforesaid, and in the face of the bonds subsequently issued there-

under, that their issuance was in accordance with the amended act of the 5th called session of the 41st Legislature, which amendment, as noted above, became effective on April 9, 1930.

A transcript of the record showing all proceedings of the organization of the District and of the issuance of the interim bonds was filed in the office of the Attorney General, who approved same, and his certificate of approval was recorded in the office of the Comptroller on May 1, 1930. The bonds were then issued, submitted to and approved by the Attorney General, registered with the Comptroller and delivered to the president of the District board of directors. The evidence tended to show that the entire issue of interim bonds was then wrongfully delivered to one or more of the conspirators in the undertaking, and that the bonds numbered from 1 to 650 in the total amount of $650,000 were never returned to the District, but were converted by O. O. Norwood and by him disposed of promiscuously for his own benefit.

On May 1, 1930, the State Board of Water Engineers issued to appellant J. T. Franklin, for the use and benefit of the landowners, a gratuitous permit to take certain quantities of water from the Rio Grande river for the purpose of irrigating the lands embraced within the District. As a condition precedent to the issuance of said permit, the Board of Water Engineers required the consent or joinder in the application therefor of all owners of land in the District. The permit was subject to certain restrictions, including, among others, a proviso that construction work under the same must begin within two years and shall be fully completed within five years from the date thereof. On June 18, 1930, appellant Franklin assigned said permit to O. O. Norwood for a consideration of "one dollar and other good and valuable considerations to me in hand paid." Norwood in turn assigned the permit, without recourse, to the District by written instrument dated June 24, 1930, which was duly acknowledged before a Notary Public on the same day and recited a consideration of "one dollar and other good and valuable considerations to me in hand paid by the District, the receipt of which consideration is hereby acknowledged." Several months later, on, to-wit, the 31st day of October, 1930, the directors of the District, having been unable to recover from Norwood $650,000 of the interim bonds,

were induced to sign an instrument in writing which recited, in substance, that whereas Norwood had assigned to the District the water permit hereinbefore referred to for one dollar and other considerations, and it being "deemed advisable by both parties to these presents that said consideration be expressly determined," it was agreed that the full consideration for said permit is the sum of $8.44 per acre of land authorized to be irrigated by the terms of said permit, and that Norwood agrees to accept interim bonds of the District numbered from 1 to 650, inclusive, aggregating the sum of $650,000 in payment thereof.

[3] The District has not carried out or attempted to carry out any of the useful purposes for which it was created. It has not levied or collected, or attempted to levy or collect, any taxes for any purpose. The property owners in said District have not received and will not receive any benefit from the proposed undertaking. The directors of the District, although legally qualified, appear to have acted throughout at the behest of the promoters and conspirators, rather than in the interest of the District. The evidence in the case is abundant to sustain implied findings by the trial court of fraud, collusion and overreaching in the transactions hereinbefore delineated.

Appellant Miller and the bank which he represents hold approximately $500,000 of the bonds in controversy, which they acquired during the years 1936 and 1937. All of the matured interest coupons attached to said bonds were unpaid at the time when they purchased same. If the bonds were valid obligations of the District, there is no showing in the record as to why they should have been worth less than par and accrued interest on the open market at any time. Miller and his bank purchased said bonds at a cost of less than twenty per cent of the face value thereof at a time when Miller knew sufficient facts to charge him with actual notice of the illegality in the issuance of said bonds and in their subsequent delivery to Norwood. We think the trial court was justified in finding that all of said bonds were acquired with full knowledge on the part of appellants that they were at best buying highly speculative securities which were in all reasonable probability headed into dangerous and doubtful litigation, and that none of appellants acquired the bonds.

which they now hold in good faith so as to make them holders in due course.

■ Section 59(c), Article XVI of the Constitution of Texas, under which the District was created, reads in part as follows: "The Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted." This inhibition is not only against the power of the Legislature to provide for any indebtedness against any such district, but it also prevents authorization for the issuance of any bonds unless the proposition upon which the bonds are to be issued shall first be adopted by the voters. Since the interim bonds in controversy were issued under the provisions of Article 7880—84a of Vernon's Ann.Civ.Stats., as amended by the 41st Legislature, 5th C.S., Chap. 31, p. 163, which amendment became effective on April 9, 1930, without such proposition having been first submitted to the voters of the District for their adoption, we hold that said bonds are invalid and void because issued in violation of the plain provisions of the Constitution. The fact that the voters of the District approved the creation of an indebtedness to be evidenced by the issuance of construction bonds in the sum of $5,500,000 at the election which was held on March 14, 1930, and thereby, under the then existing law, authorized the issuance of $550,000 of interim bonds to mature within five years as a part of said indebtedness, did not constitute authorization for the issuance of $1,150,000 of interim bonds to mature within ten years under the terms of a subsequently enacted law. Such, as we understand, is the clearly expressed holding of the Supreme Court in its opinion on the former appeal of this cause. State ex rel. Abney v. Miller, 133 Tex. 498; 128 S.W.2d 1134. See also: Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629; San Saba County v. McCraw, 130 Tex. 54, 108 S.W.2d 200, and cases there cited.

■ Appellants assert that because the bonds in controversy were approved by a former Attorney General, registered by the Comptroller, and purchased by them on the open market, Article 7880—34 of Vernon's Civil Statutes requires judgment decreeing the same to be valid. We are in full ac-

cord with the sound public policy which doubtless prompted the enactment of this article of the statutes. It may be that by reason thereof the relators herein would be cut off from the right to maintain this suit in their individual capacities, although in view of the provisions of Articles 715 and 8010 of said Statutes we doubt whether any interested citizen would be deprived of his right to question the validity of the bonds in controversy on fraudulent or constitutional grounds. However that may be, it appears that the State, through the Attorney General, upon his own motion, or upon the motion of any person affected by the existence of the bonds in dispute, is expressly authorized by the provisions of subsection 25a of said Article 7880 to have the validity of said bonds judicially inquired into and determined in this proceeding. See State ex rel. Abney v. Miller, 133 Tex. 498, 128 S.W.2d 1134, point 1.

■ Appellants also contend that because the Legislature has passed two applicable validating acts as embraced in Articles 7880—147w and 7807h of said statutes, subsequent to the issuance of said bonds, the same should now be held valid. We recognize the general and established rule that the Legislature has the power to ratify that which it had the power to authorize in the first instance. While the Legislature, at any time prior to the election which was held on March 14, 1930, could have authorized the proposition upon which the interim bonds in this case were actually issued, the obvious fact is that no such legal authority existed at the time when the election was held, with the result that such proposition was not submitted to the voters, and the Legislature could not have authorized at any time the issuance of any bonds by the District unless the proposition upon which they were to be issued was first submitted to the voters. Therefore, we do not think the statutes relied upon are controlling in their application to the facts of this case. But if it was the legislative intent that any of the cited statutes should be construed as contended for by appellants, then it is fundamental that no act of the Attorney General, or of the Comptroller, or indeed of the Legislature itself, could give validity to that which is expressly prohibited by the Constitution. Radford v. City of Cross Plains, 126 Tex. 153, 86 S.W.2d 204, and cases cited; Bigfoot Ind. Sch. Dist. v.

Genard, Tex.Civ.App., 116 S.W.2d 804, and cases cited; Id., 133 Tex. 368, 129 S.W.2d 1213.

On March 1, 1932, the District Court of Hidalgo County rendered judgment in a cause styled Montalvo vs. the District et al. in which the court purportedly decreed all of the interim bonds, including those here in dispute, to be valid obligations of the District. It appears that Montalvo and six other landowners in the district instituted the suit in their own right. The judgment recites on its face that although duly notified in advance of the setting of the cause, the plaintiffs failed to appear and further prosecute the same. The judgment also contains the unusual recitation that the plaintiffs had asked the defendant District through its directors to take charge of the prosecution of their suit, which was accordingly done. This judgment further recites that the $650,000 of interim bonds which it purports to validate were delivered by the District to Norwood in consideration of the water permit which we have already referred to. Neither the appellee, nor any of the relators herein, was a party to the Montalvo proceeding. All of the defendants in the Montalvo suit were made defendants in this cause. Some of the appellants here were parties to that proceeding but appellant Miller and some other appellants here were not parties to that suit. The evidence is sufficient to support the inference that said judgment was entered by agreement of the parties then before the court.

We do not think the trial court erred in setting aside the Montalvo judgment. If the same was not absolutely void, it was unquestionably erroneous and voidable. Grant v. Ellis, Tex.Com.App., 50 S. W.2d 1093. Ordinarily the statutes of limitation do not operate against any right of the State. They should not be given effect when the State, as in this case, is acting in a purely governmental capacity to protect against the demoralizing effects of fraud perpetrated against one of its political subdivisions dedicated under the Constitution to the furtherance of public rights and duties. See Town of DeKalb v. State, Tex.Civ.App., 71 S.W.2d 299; Fannin-Lamar-Delta Improvement Dist. v. State, Tex.Civ.App., 73 S.W.2d 1101, error dismissed.

Furthermore, in the absence of any construction work by the District or of any effort on its part to levy or collect any taxes for the payment of its bonds, and in the absence of notice that the holders of said bonds intended to assert a right to enforce payment thereof, and under the other circumstances shown by the record in this cause, we can not say when, if at all, the running of any statute of limitation or the application of the equitable doctrine of laches was set in motion or was ripened into maturity, even as against the relators in their individual capacities as private citizens. See State Mortgage Corporation v. Ludwig, 121 Tex. 268, 48 S.W.2d 950, point 8, and cases cited. But regardless of whether the trial court was or was not authorized to set the judgment aside, the same is not res adjudicata of the issues in the present case as between the parties to this cause, for the reason that appellee was in nowise a party to that proceeding.

And finally, appellants say that if the District was not authorized to issue $650,000 of interim bonds, it was nevertheless authorized to issue $550,000 and that the court should have reduced the amount of each bond to 55/65ths of its face amount and should have then validated each bond in such reduced amount. For the reasons before indicated, we do not think the interim bonds as issued ever had any potential vitality, either in whole or in part, for any purpose whatsoever. But if said bonds were not void ab initio, they were in all events illegal, and we see no reason whatsoever why a court of equity should be required, under the facts of this case, to now reform the transaction, or the bonds evidencing the same, so as to permit appellants to recover 55/65ths of the face amount of the claims which they acquired in bad faith and thereby reap an unconscionable profit from defrauded citizens by means of an involuntary lien upon their homes to be enforced through the power to tax.

After careful consideration of the entire record, we have concluded that this court can not place the stamp of its approval, either at law or in equity, upon all or any part of the interim bonds involved in the litigation. Therefore, all of appellants' assignments are overruled and the judgment of the trial court is affirmed.