## MOORE v. MAVERICK COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. I.

### No. 11125.

Court of Civil Appeals of Texas. San Antonio.

May 13, 1942.

Rehearing Denied June 17, 1942.

J. B. Lewright, of San Antonio, for appellant.

Ben V. King, of Eagle Pass, Brooks, Napier, Brown & Matthews and W. F. Nowlin, all of San Antonio, and Royce A. Oxford, of Edinburg, for appellee.

NORVELL, Justice.

This is an appeal from a judgment allowing appellee, Maverick County Water Control and Improvement District No. 1, a recovery of $68,511.54 against appellant, G. Bedell Moore, and awarding a foreclosure of various liens against real property owned by appellant and situated within the boundaries of the water district.

The total amount of the judgment includes the following items: (1) $1,547.99—ad va-

lorem taxes for the year 1940.[1] (2) $24,-899.64—special land assessments for bond retirement purposes.[1] (3) $38,328.44—flat rate assessments,[2] and (4) $3,735.47—amortization and emergency fund assessments.[3]

The last three items mentioned covered the years of 1936 to 1940, both inclusive.

Appellant's brief contains twenty-two points, many of which are subdivided into several propositions. We shall therefore

---

[1] " * * * Whenever such improvement bonds shall be issued, provision shall be made prior to issuance thereof for the levy of ad valorem taxes on all taxable property in such district fully sufficient to pay principal thereof and interest thereon. All such ad valorem taxes provided for the payment of the principal of and interest on said bonds shall be deposited in a special account known as the 'Bond and Interest Redemption Fund', and used for no other purpose and for the purpose of supplementing and augmenting such special account and to the end of providing additional income with which to liquidate and pay off the bonds of said district as they mature and pay the interest thereon as it accrues, such districts shall be authorized to hereafter annually levy, assess and collect against all lands within the district which have been and/or will be enhanced in value and improved by reason of the improvements made and to be made and which will be benefited thereby by being made irrigable by gravity, without reference as to whether such land is to be actually irrigated or not, a special assessment of not more than five ($5.00) dollars per acre, in the following manner: The Board of Directors of such district, upon being presented with a petition in writing signed by a majority in number of all of the land owners within such district whose lands are to be affected thereby, shall adopt a resolution declaring that in their judgment it is advisable and for the best interest of such district, and will be a benefit to the lands and property included in said district and affected thereby, to levy and collect annually the special assessment hereinabove referred to. Such resolution shall be entered in the minutes, and notice of its adoption shall be given by publication in a newspaper having general circulation in the county in which such district is situated. Such notice shall be published once a week for two consecutive weeks; the first publication must appear not less than ten (10) full days prior to the time set down for the hearing. Such notice shall state the time and place of hearing and shall set out the resolution in full. It shall notify all interested persons to appear and offer testimony for or against the proposal contained in the resolution. If, upon such hearing, the Board of Directors find that it would be advisable and for the

best interest of the district, and would be a benefit to the lands and property situated in said district and affected thereby then, and in that event, such Board shall enter its order so finding, and said district shall thereupon be authorized to levy and assess and collect annually thereafter a special assessment against all of the lands within such districts as are or to be made irrigable by gravity, without reference as to whether such land is to be actually irrigated or not. * * * " Acts 1934, 43rd Legislature, 3rd Called Session, Chapter 12, page 19, Article 7880—147z, Sec. 9, Vernon's Ann. Civ.Stats.

[2] " * * * The board of directors, on or as soon as practicable after a date in each year to be fixed by a standing order of the board, shall carefully estimate the expense to be incurred during the course of the next twelve months for the maintenance and operation of the irrigation system. A proportionate part of the amount so estimated, not less than one-third, nor more than two-thirds, to be determined from year to year by the board of directors, shall be paid by assessment against all irrigable lands within the district, pro rata per acre; that is to say, against all lands to which the district is in condition to furnish water by its then systems of canals and laterals, or through extensions thereto of then existing laterals, but without reference as to whether such land is to be actually irrigated or not, and the remainder of the amount so estimated shall be paid by the persons taking water or applying for water as aforesaid." Acts 1925, 39th Legislature, Ch. 25, page 116, Sec. 109, Art. 7880—109, Vernon's Ann.Civ.Stats.

[3] " * * * The board of directors of each district shall cause to be made by a competent engineer an inspection and valuation of all the physical properties of such district, subject to decay or obsolescence, injury or damage by any sudden, accidental or unusual cause whatsoever, and based upon inspection and valuation said engineer shall determine, as nearly as may be, a sum to be annually set aside as will be sufficient to pay for replacement of each item of such physical property at the end of its economical life, or for the restoration or replacement of any such physical property upon the happening of such loss, injury or damage thereto. Out of the maintenance and operation fund, as the same shall be col-

not attempt a separate discussion of each of the points or the numerous propositions asserted thereby. Appellee's petition stated a cause of action and no attack upon the validity of the ad valorem tax is presented.

Appellee is a water control and improvement district organized under the provisions of Article 16, Section 59, of the Texas Constitution and Chapter 25 of the General Laws of the 39th Legislature, 1925, and amendments thereto. Articles 7880–1 to 7880–147z, inclusive, Vernon's Ann.Civ. Stats.

Appellant contends that each and all of the assessments charged against his lands are illegal and unenforcible under various sections of the State Constitution, particularly Article 16, Sec. 59, Subdivision (c), which provides that: "The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as amy (may) be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; *provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted.*" (Italics ours.)

Appellant also asserts that the arrangement whereby the proceeds derived from the sale of water for power purposes are used for the retirement of bond obligations of the district is invalid because of constitutional provisions.

In the year 1935, and after the adoption by the Legislature of Article 7880–147z, Vernon's Ann.Civ.Stats., Acts 1934, 43rd Legislature, 3rd Called Session, Chapter 12, the District entered into certain contracts with the representatives of the holders of the district's bonds in the amount of $5,058,-000, Rio Grande Power Company, a corporation formed by the bondholders, the Central Power and Light Company, a public service corporation, and Public Works Administration, a federal agency, whereby, in effect, all claims based upon bonds theretofore issued by the district were surrendered in consideration of the district's agreement to pay to Rio Grande Water Power Company approximately $150,000 a year, in cash, or 4% interest-bearing bonds of the district for a period of forty years. This undertaking was secured by an assignment for a period of forty years of all revenues derived from a contract which the district had with Central Power and Light Company, relating to the sale of water for the purpose of generating power. The district, by a vote of the property tax-paying voters of the district, authorized the following bond issues:

(a) $1,858,000 4% bonds, sold to the P. W. A.

(b) $2,000,000 non-interest bearing bonds, held by Rio Grande Water Power Company.

(c) $2,000,000 4% bonds held by the District.

By an agreement between the District and the Rio Grande Water Power Company, it was provided that should the proceeds from the sale of water to Central Power and Light Company be less than $100,000, the District would exchange $50,000 of its 4% bonds for a like amount of non-interest bearing bonds of the District; that in the event the proceeds from sale of water exceeded $100,-000, but were less than $150,000, interest-bearing bonds totaling the amount of the difference between $100,000 and $150,000 would be exchanged. In the event the amount realized from sale of water for any one year was $150,000 or more, the Water Power Company obligated itself to deliver to the District $50,000 of non-interest bearing bonds.[4]

---

lected, such board of directors shall set aside such portion thereof as shall be necessary to make each year the amount of the annual sum determined as above provided to be known as the 'Amortization and Emergency Fund', and no part of such fund shall be expended except to replace such amortization property, or to replace or restore such lost, injured or

damaged property." Acts 1925, 39th Legislature, Ch. 25, page 115, Sec. 104, Art. 7880—104, Vernon's Ann.Civ.Stats.

[4] Appellee district was originally organized as a water improvement district in accordance with Chapter 2, Title 128, Rev.Civ.Stats. 1925, Articles 7622 et seq., Vernon's Ann.Civ.Stats. On August 6, 1929, it was converted into a wa-

■ There is no merit in appellant's attack upon the legality of the various contracts and agreements above mentioned. It may be here pointed out that Article 16, Sec. 59, of the Constitution does not require that the board of directors of a water control and improvement district submit every agreement or contract made by them to a vote of property tax-paying voters of the district. Such a vote is required only for the issuance of bonds or the providing for an indebtedness. Each of the bond issues of 1935 were authorized by the requisite constitutional vote.

■ It further appears that the refinancing plan adopted, including bonds authorized and the various contracts executed, was in conformity with the provisions of Chapter 12 of Acts of the 43rd Legislature, Third Called Session 1934. Article 7880–147z, Vernon's Ann.Civ.Stats. This Act was in full force and effect at the time of the bond election and may properly be considered as a part of the proposition voted upon at said election. State ex rel. Abney v. Miller, 133 Tex. 498, 128 S.W.2d 1134.

■ The contracts involved provide for, and the Act of the Legislature permits, the use of funds derived from the sale of water for the purpose of retiring the bonded indebtedness of the district. No constitutional provision has been cited which either prohibits the use of such funds for bond retirement purposes or requires that such funds be first applied to the discharge of maintenance and operation charges of the district before the balance may be used for bond retirement purposes. We therefore hold that, as against the attack here presented, the bonds of the district, as well as the contracts entered into as a part of the general refinancing and rehabilitating plan of 1935, must be considered valid and binding.

■ Having held that the bond issues of the District are valid, we next consider appellant's contention that the "special land assessments" are unenforcible. These assessments are made for bond retirement purposes and, as above pointed out, such assessments are expressly authorized by statute. The record shows that the district complied with the requisite statutory procedure in adopting the plan of assessment and placing the same in operation.

Appellant contends that funds used for bond retirement purposes must be acquired from a tax levied upon an ad valorem basis, and from that source only. He points out that the City of Eagle Pass lies within the boundaries of the district, and that the levy of an assessment upon a "benefit basis," as provided for in Article 7880—147z, Sec. 9, will place a more onerous burden upon lands lying within the district but outside the City, than they would bear under ad valorem assessments.

This result is not necessarily inequitable in the constitutional sense. The particular provision applicable to reclamation districts, such as the one here involved, provides that the Legislature shall "authorize the levy and collection of * * * taxes, equitably distributed * * *." Constitution, Art. 16, Sec. 59, subd. (c).

■ This provision was construed by the Supreme Court shortly after said amendment became effective, and in Dallas County

---

ter control and improvement district. This action was confirmed and validated by a special act of the Legislature in 1930. Chapter 2, Special Acts of the 41st Legislature, Fourth Called Session.

In 1927 the property taxpaying voters of the district authorized the issuance of two bond issues, aggregating the principal sum of $6,600,000. $5,058,000 of said bonds were sold and the proceeds thereof used for construction purposes. The District commenced actual operations in April, 1932. In September of that year an unprecedented and particularly disastrous flood of the Rio Grande occurred. Appellee's main canal was destroyed and the district ceased to be operative. Prior to this disaster the district had entered into a contract with the Central Power and Light Company under the terms of which it delivered water to said company for power purposes. As a result of the inability of the district to perform, this contract was cancelled.

As a result of negotiations between and among representatives of the holders of the district's bonds, the board of directors of the district, the Central Power and Light Company and the Public Works Administration the district was rehabilitated and again set upon an operating basis. The P.W.A. made an outright grant of $676,000 to the district and purchased $1,858,000 of the bonds of the district. The sums of money so realized were used in repairing and reconstructing the canal system of the appellee. The P.W.A. grant and loan was a part of the general plan of rehabilitation and refinancing which gave rise to the contracts mentioned above.

Levee District No. 2 v. Looney, 109 Tex. 326, 207 S.W. 310, Chief Justice Phillips clearly indicated that either a tax upon an ad valorem basis or a special assessment upon a benefit basis is permissible under the constitutional provision that taxes must be "equitably distributed." See also City of Wichita Falls, for Use and Benefit of L. E. Whitham & Co., v. Williams, 119 Tex. 163, 26 S.W.2d 910, 79 A.L.R. 704.

■ It can not be said that the statute, Art. 7880—147z, violates the due process clauses of either the State or Federal Constitution. It was not necessary for the property tax-paying voters of the district to expressly authorize assessments on a benefit basis. The statute, Article 7880—147z, Sec. 9, does not require it, and Article 16, Sec. 59, of the Constitution provides only that the issuance of bonds and provision for indebtedness shall be authorized by the property tax-paying voters at an election. Methods of payment of duly authorized bonds and indebtedness are proper subjects of legislative selection, as long as the requirement that taxes be equitably distributed is not violated. Further, as pointed out above, Article 7880—147z was in force and effect at the time the bonds here involved were authorized by the property tax-paying voters of the district. State ex rel. Abney v. Miller, supra.

We hold, therefore, that no reversible error is shown in connection with the recovery allowed appellee upon the special land assessments involved.

■ We next consider appellant's attacks upon the flat rate assessments and the assessments for the amortization and emergency fund.

These assessments are commonly referred to as "service charges" and may be considered together.

Appellant contends that these service charges are invalid because they were not authorized by a vote of the property tax-paying voters of the district. As supporting this contention, he relies upon the case of Austin Mill & Grain Co. v. Brown County Water Improvement District No. 1, Tex.Civ. App., 128 S.W.2d 829; Brown County Water Improvement District v. Austin Mill & Grain Co., 135 Tex. 140, 138 S.W.2d 523.

The Brown County case is not in point. It deals with the validity of an ad valorem tax for maintenance purposes and not with a flat rate assessment, or. with an amortization and emergency fund assessment.

The constitutional distinction between the ad valorem tax and the assessments here involved is clear and well defined. In Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629, 633, it was directly held that the constitutional vote required by Article 16, Sec. 59 Subd. (c), was applicable only "to * * * bonds and indebtedness to be paid out of tax funds."

As pointed out by this Court in Brady v. Hidalgo County Water Control and Improvement District No. 12, Tex.Civ.App., 56 S.W.2d 298, affirmed 127 Tex. 123, 91 S. W.2d 1058, service charges, such as the assessments here involved, can not precede, but can only follow, irrigation operations. Service charges are based upon the ability of the district to deliver water to and render service for the benefit of particular lands within the district. Such assessments can not be made against lands to which the district is unable to deliver water, nor for which no appropriate service can be rendered. Clearly, these charges and assessments are not "taxes" within the meaning of the term as defined and discussed in Lower Colorado River Authority v. McCraw, supra. See Hidalgo and Cameron Counties Water Control and Improvement District No. 9 v. American Rio Grande Land and Irrigation Co., 5 Cir., 103 F. 509.

Not being taxes, it is not necessary to the validity of their assessment that an indebtedness authorized by a constitutional vote be existent, as in the case of an ad valorem tax.

Appellant's points attacking the validity of the "flat rate" and "amortization and emergency fund" assessments are overruled.

We also overrule appellant's contention that a portion of the recovery awarded appellee by the trial court was barred under the terms of Article 5526, Vernon's Ann.Civ. Stats., Hidalgo and Cameron Counties Water Control and Improvement District No. 9 v. American Rio Grande Land and Irrigation Company, supra.

No reversible error being shown, the judgment of the trial court is affirmed.