**HOLDERMAN v. HIDALGO COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. 12 et al.**

No. 10635.

Circuit Court of Appeals, Fifth Circuit.

May 19, 1944.

Chas. E. Thompson, of McAllen, Tex., and L. Hamilton Lowe, of Edinburg, Tex., for appellant.

Vernon B. Hill and D. F. Strickland, both of Mission, Tex., W. L. Matthews, of San Antonio, Tex., and Geo. W. Barcus, of Austin, Tex., for appellees.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought by plaintiff, claiming to be an innocent purchaser of interim bonds of Hi-

dalgo County Water Control and Improvement District No. 12, this suit involving part of the bond issue dealt with in Laycock v. Hidalgo County Water Control and Improvement District No. 12, et al., 5 Cir., 142 F.2d 789, this day decided, was tried along with Laycock's case and on the same record. While in Laycock's case, coupons attached to some of the bonds had been put in judgment, and the suit was on that judgment to enforce it; in this case, the suit is on the bonds. Fully recognizing that the bonds have been declared to be, and are, invalid and that unless he is entitled to protection as an innocent holder, he cannot prevail, Holderman's whole efforts have been directed to establishing that he was bona fide holder for value, and as such is entitled to protection.

The district judge found that Holderman had no actual notice of the facts which render the bonds void and of the circumstances surrounding their disposal, but that, taking into consideration the recitals in the bonds and the other facts which he knew, he was put on inquiry, which inquiry if pursued would have led to notice of all the facts. He found also: that the bonds and the resolution authorizing them showed on their face that they were issued not under the statute in force at the time they were voted but under the amended statute and without a vote; and that, the Texas courts having held that their issuance under the amended statute without a vote made them illegal and void on their face, Holderman was in law charged with notice of this invalidity and could not recover.

Here appellant recognizes that, since more bonds were issued than were authorized under the statute in force when the vote was taken, $550,000 authorized and $650,000 issued, no bond can be enforced for its full amount. He insists though that, under Citizens' Bank v. Terrell, 78 Tex. 450, 14 S.W. 1003, City of Laredo v. Looney, 108 Tex. 119, 185 S.W. 556, and Rockwall County v. Roberts County, 103 Tex. 406, 128 S.W. 369, the issued bonds must be considered valid in the amount authorized by the statute and invalid only as to the excess, each bond to be scaled proportionately, and that plaintiff should have had a judgment on his bonds not for their face, but for 55/65ths thereof. He particularly insists that the court erred in finding him not an innocent purchaser for value without knowledge of the fraud which had attended the issuance and floating of the bonds.

Appellees, urging that the district judge was right throughout, insist that, since the Texas courts have held that the issuance of the bonds, under the amended statute, without a vote, renders them void and that they show on their face that they were so issued, there can be no question here of innocent purchase or of scaling.

We agree with appellees. The law is settled that while an innocent purchaser of bonds holds them free of the consequences of defects not apparent on the face of the record, he takes them with all their disclosed imperfections on their head, and if it is determined as matter of law that the bonds are invalid on their face, he cannot shelter behind his own lack of knowledge of the law, or legal opinions to the contrary. The rule of scaling invoked by appellant has no application here. That principle applies to bonds whose only defect is that in issuing them debt limits have been exceeded. It operates to cure that defect by scaling the bonds back to the allowed amount. The defect asserted here is not that the debt limit has been exceeded, but that bonds, legal and valid only if authorized by vote, were issued without a vote. It is quite clear that the courts of Texas have held: (1) That the bonds were issued under the amended statute; (2) that to be valid under that statute they must have been voted since its enactment; and (3) that, not having been so voted, they are void and no person can take valid title to, or recover on, them.

The Supreme Court, in State ex rel. Abney v. Miller, 133 Tex. 498, 128 S.W.2d 1134, 1137, flatly held that interim bonds of the issue under attack here were not "authorized by the voters" and that, because they were not, they were not valid. The court said:

"We do not hold that Article 7880—84a, as amended, authorizing the issuance of ten year interim bonds * * * is unconstitutional * * *. What we hold is that the amendment may not be given retroactive effect, but is applicable only to bonds voted after its effective date. The validity of interim bonds, as of all other bonds, must be tested by the law as it existed when their issuance was authorized."

In Miller v. State, 155 S.W.2d 1012, the Court of Civil Appeals rejected the same contention urged here, that the bonds were

invalid only to the extent of their excess over the amount authorized by the statute in force when they were voted and that the defect could be cured by scaling. It said at page 1018 of 155 S.W.2d, "For the reasons before indicated,[1] we do not think the interim bonds as issued ever had any potential validity, either in whole or in part, for any purpose whatsoever." The judgment was right. It is affirmed.

SIBLEY, Circuit Judge (concurring).

I concur in the judgment but see the case as follows:

The electorate of the district, as provided by the Texas Constitution, authorized a bond issue. The statute then existing authorized the issuance of ten per cent thereof as ad interim bonds, on the security of the main bonds, not increasing at all the amount of indebtedness. After the election and before the issuance of any ad interim bonds the statute was amended so that twenty-five per cent of ad interim bonds might be issued. The officers of the district, thinking the amendment applied retroactively to their election and bonds, passed a resolution to issue twenty-five per cent. Only $650,000 were actually negotiated so as to become outstanding, being a little less than twelve per cent. About two per cent thus were outstanding in excess of the ten per cent contemplated by the election.

The amending statute expressly repealed all *conflicting laws,* but this did not repeal the former ten per cent statutory authorization, but enlarged and carried it forward. There was no conflict. Either under the new, or under the former law, ten per cent of ad interim bonds could still have been issued. But since the election had authorized only ten per cent, no more could be issued for lack, as to the excess, of *authority* from the *electorate.* The result is that there was no lack of *statutory* authority, but as to two per cent there was excess of *constitutional authority from the electorate.*

The consequence, as settled in Texas by Citizens' Bank v. Terrell, 78 Tex. 450, 14 S.W. 1003, and cases following it, is that only the indebtedness in excess of the authority is void, and when all bonds are delivered at once as here, each must be scaled down pro tanto. That, I think, is clearly the case here. A Texas Court of Civil Appeals in Miller v. State, 155 S.W. 2d 1012, expressed the opinion that these bonds are wholly void, but said also that they should not be scaled because the parties before the court were holders in bad faith, being persons who had participated in a fraudulent obtaining of the bonds from the district without payment of value for them. We should go no further in applying this case as authority against the previously settled law that bonds are to be scaled when authority is exceeded.

The appellant here, admitting his bonds must be scaled, seeks protection against the defense of want of consideration and fraudulent title in the first holder by asserting that he is a bona fide holder in due course before maturity. This involves no equitable principle, and no equitable doctrine of notice implied by being put on enquiry. The matter is regulated by the law merchant, embodied in the Negotiable Instruments Act. Vernon's Ann.Civ.St. of Texas, Art. 5932 and following. Article 5935 defines a holder in due course, and in § 52, Paragraph 4 states as one necessary requirement: "That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." The evidence here shows that appellant had no notice of the want of consideration or of the fraud in the title of the previous holder, but he did know of the facts which made the bonds subject to be scaled. That was an infirmity in the bonds, and notice of it prevented his being a holder in due course, and subjected him to all defenses that existed against the bonds. He loses for this reason only.

---

[1] "Since the interim bonds in controversy were issued under the provisions of Article 7880—84a of Vernon's Ann. Civ.Stat., as amended, * * * which amendment became effective on April 9, 1930, without such proposition having been first submitted to the voters of the District for their adoption, we hold that said bonds are invalid and void because issued in violation of the plain provisions of the Constitution. * * * Such, as we understand, is the clearly expressed holding of the Supreme Court in its opinion on the former appeal of this cause." 155 S.W.2d at page 1017.