SAN SABA COUNTY V. WILLIAM McCRAW, ATTORNEY GENERAL.

Motion No. 12969.   Decided July 14, 1937.
(108 S. W., 2d Series, 200.)

*G. A. Walters,* County Attorney of San Saba County, *R. E. Gray,* of San Saba, *John D. McCall* and *Millard Parkhurst,* both of Dallas, for relator.

The fact that a special road tax was voted under a law (now Articles 6790-6793, R. S. 1925) which provided that the tax could be repealed by an election, and that no bonds should ever be issued under said law, does not prevent the Legislature from enacting a special county road law authorizing the county to pledge such tax for payment of bonds issued to fund indebtedness incurred before such tax was repealed and where tax was not repealed before passage of special law, and was not repealed before the authorization of said bonds. Hamilton v. Flinn, 21 Texas 713; El Dorado Ind. Sch. Dist. v. Tisdale, 3 S. W. (2d) 420; City of Odessa v. Elliott, 58 S. W. (2d) 34.

*William McCraw,* Attorney General, *Effie Wilson-Waldron, Joe J. Alsup, Victor W. Bouldin* and *Charles B. Walker,* Assistants Attorney General, for respondent.

Since the statutes under which the special road tax was voted in 1924 allowed the tax to be voted off and prohibited the issuance of bonds against the tax, a right to vote off the tax and a right that bonds should not be issued against the tax vested in the legally qualified voters of San Saba County which are protected by Article 1, Section 16, of the Constitution of Texas. David v. Timon, 183 S. W. 88; 18 R. C. L. 126, Sec. 39; 28 Tex. Jur. 544, Sec. 16.

MR. JUSTICE CRITZ delivered the opinion for the Court.

This is a motion to file petition for mandamus. The motion is filed by San Saba County as relator and seeks to file petition for mandamus against William McCraw, Attorney General of Texas, as respondent. The petition accompanies the motion. The petition seeks to compel respondent to approve certain funding road and bridge bonds of relator aggregating $48,500.00. The proposed bonds bear 4 1/2 per cent. interest, payable semiannually. They are numbered consecutively from 1 to 49, both inclusive. They are of the denomination of $1,000.00

each, except bond No. 1, which is of the denomination of $500.00, and they mature serially, beginning October 1, 1937, and ending October 1, 1963. The case has been fully briefed by both parties.

Before proceeding further, we deem it expedient to copy into this opinion the part of Section 9, of Article VIII, of our State Constitution which we deem pertinent here:

" * * * and no county * * shall levy more than 25¢ for * * * county purposes, and not exceeding 15¢ for roads and bridges, * * * and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided that a majority of the qualified property taxpaying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed 15¢ on the $100.00 valuation of the property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of the public roads and highways without the local notice required for special or local laws."

In order to effectuate the part of the constitutional provision just quoted, providing for an additional road tax for counties of not exceeding 15¢ to be voted by the property taxpaying voters, the Legislature enacted Articles 7042 to 7046, both inclusive, R. C. S. of Texas, 1911. These are the statutes applicable here, as will later appear. We will not attempt to quote the above statutes. We note, however, that they put into effect the part of the above constitutional provision providing for the levy of an additional 15¢ road tax where authorized by a majority vote of the property taxpaying voters of a county. Also, such statutes provided the way and conditions under which such tax once voted into effect could be voted off. In this regard it was provided that where the tax was carried no election to repeal it should be held in less than two years. Finally, Article 7046 expressly provided: "No bonds shall ever be issued under the provisions of this chapter." At this point we pause to note that, with changes immaterial here, the above mentioned Articles of the 1911 codification were carried into the 1925 codification as Articles 6790 to 6793, both inclusive.

The 45th Legislature enacted Senate Bill 303, which in legal effect, if valid, is a special road law for San Saba County. This Act, if valid, took effect March 11, 1937. Omitting parts immaterial to this opinion, this Act reads as follows:

"Be it enacted by the Legislature of the State of Texas:

"Section 1. The Commissioners' Court of San Saba County, Texas, is authorized and empowered to fund any and all outstanding scrip warrants chargeable against its Road and Bridge Fund as of February 15, 1937. The Commissioners' Court of said County may issue said bonds on its own motion and without the necessity of giving notice of intention to issue same. Such funding bonds may be issued by the Court payable serially or otherwise within a period of time not exceeding forty years as the Court may direct and shall bear interest at a rate not to exceed 5% per annum, interest payable annually and semi-annually as may be determined by the Court, in such denominations as may be prescribed by the Court. At such time as said bonds shall be issued it shall be the duty of the Commissioners' Court to levy an annual ad valorem tax on all taxable property within the County sufficient to provide for the payment of principal and interest of said bonds, which tax shall be chargeable against the Road and Bridge Fund of the County or the special maintenance tax fund heretofore voted in said County, or against either or both of said funds, provided that the aggregate amount of said bonds herein authorized shall not exceed the limitations provided by the Constitution and in no event shall exceed Sixty-eight Thousand ($68,000.00) Dollars.

"Sec. 2. All actions of the Commissioners' Court in passing orders authorizing the issuance of said scrip warrants outstanding as of February 15, 1937, and all actions of the officials of said County in executing and delivering said warrants and all of said warrants are hereby authorized, confirmed, ratified and validated.

"Sec. 3. The General Laws of the State of Texas pertaining to roads and bridges shall be applicable in San Saba County to the extent that they do not conflict with the provisions hereof. In case of conflict the provisions of this Act shall be affected.

"Sec. 4. All laws and parts of laws in conflict herewith insofar as they conflict herewith are hereby repealed."

In 1924 the qualified property tax-paying voters of San Saba County voted to levy and collect the additional 15¢ road tax provided for by the above constitutional provision. This vote was had at an election held while Articles 7042 to 7046, R. C. S., 1911, supra, were in full force and effect. By authority of that election alone such tax has been levied every year since such vote.

It appears that subsequent to 1924, and prior to February 11, 1937, the Commissioners' Court of San Saba County had issued certain scrip warrants against the county's road and bridge fund. We presume that these warrants aggregate the amount of these proposed bonds. These warrants are now out-

standing and are unpaid. The $48,500.00 funding bonds here involved were issued in strict conformity with Senate Bill 303, supra, for the purpose of taking up and funding such warrants. Also, these bonds, if issued, will constitute a charge against the above voted special road tax, or a part thereof, and they can not be paid except a resort be had to such tax.

When this bond record was presented to the Attorney General for approval he refused to approve the same on the ground that the proceeds of the special road tax of 15¢ voted by San Saba County in 1924 could not be lawfully pledged for their payment. In this proceeding San Saba County seeks to file petition for mandamus to compel such approval.

■ As already shown, the 15¢ special road tax now in force in San Saba County was voted in 1924—long prior to the effective date of Senate Bill 303, supra. Under the law (Articles 7042 to 7046, R. C. S., 1911), as it existed at the time such tax was voted, no bonds could be issued against the same. Also, under such law as it then existed the voters had the substantial right to vote on the repeal of such tax every two years. Under the terms of Senate Bill 303, supra, all this is changed and the Commissioners' Court is given the power, of its own motion, and without a vote, to issue funding bonds against such tax running forty years. Of course, if this can be done, the qualified taxpaying voters will be denied the right to repeal such tax until such bonds are paid. Furthermore, such tax will be pledged for bonds in the face of the fact that when it was voted this could not have been done. We think to merely state the effect of Senate Bill 303 demonstrates its invalidity. Crabb v. Celeste Ind. Schl. Dist., 105 Texas 194, 146 S. W. 528; David v. Timon, (Civ. App.) 183 S. W. 88; Shelby County v. Provident Sav. Bk. & Tr. Co., 54 Fed. (2d) 602.

■ A reading of Section 9, of Article VIII, of our State Constitution, will show that it does not unconditionally authorize the levy of the special 15¢ road tax here involved. To the contrary, it expressly makes the right to levy such tax dependent upon a condition, and that condition is that such tax shall first be authorized by a majority vote of the tax-paying voters of the county. It is settled that where the Constitution authorizes the levy of a special tax by a vote of the tax-paying voters of a municipality or quasi municipality such tax is not levied by the municipality or quasi municipality, but by the voters to whom has been delegated the taxing power. Crabb v. Celeste Ind. Schl. Dist., supra. It follows that in this instance the 15¢

special road tax now in force in San Saba County was levied by the voters at the 1924 election.

■■ A further reading of Section 9, of Article VIII, of our State Constitution, will show that it deals with two taxation powers in so far as road taxes for counties are concerned, (a) an unconditional power to levy a 15¢ tax, and (b) a conditional power to levy an additional 15¢ tax. The power to levy this additional tax does not exist under the Constitution unless and until two events have transpired: (a) The Legislature must pass an enabling law authorizing the same, and (b) the qualified taxpaying voters, acting under and by authority of both the Constitution and the enabling law, must vote the tax. Certainly under such conditions it must be held that the tax voted is the tax provided by law at the time the vote is had. In other words, it must be held that the vital conditions and safeguards surrounding the tax voted at the time of the election thereon became a part of the very election itself. Moore v. Coffman, 109 Texas 93, 200 S. W. 374. In the case at bar the qualified taxpaying voters of San Saba County voted under a law that secured to them the right to vote off such tax in two years, and, further, such voters voted under a law that guaranteed to them that the proceeds of such tax could never be charged with a bond issue. This law was passed for the purpose of putting into effect the constitutional provision authorizing such tax. Now, after such tax is voted, the Legislature, without the consent of the voters, has attempted to impair and destroy their rights existing at the time of the vote. To our minds such a legislative act not only violates the very constitutional provision authorizing the tax to be voted, but violates Section 16, of Article I, of our State Constitution as well. David v. Timon, supra.

In the Moore case, supra, the commissioners' court of Knox County called an election to issue bonds. The petition for the election, the order ordering same, and the notices provided that a part of the proceeds of such bond issue would be used to build two bridges, and the location of these bridges was designated in such petition, order, and notices. The election resulted favorably to the bond issue. Afterwards the commissioners' court determined to build one of the bridges at a different place than the one designated as above. Under such a record this Court, speaking through Chief Justice PHILLIPS, held that the commissioners' court could not devote the proceeds of such bond issue to the building of a bridge at such changed location. In this connection we quote the following from the opinion:

"To say, as is urged, that the incorporation of the location of the bridges in the commissioners' court's statement of the purpose of these bonds was surplusage and is, therefore, of no effect, is to deny to those courts the power of so declaring the purpose of a bond issue of this character as a means of fully acquainting the property owning voters of a county with the exact use intended to be made of the bonds. For if the court had the power to include in its definition of the purpose of the bonds so material a matter as the proposed locations of the bridges, that part of the stated purpose can not be regarded as mere surplusage. It can be so treated only upon the theory that the court in so including it transcended its authority, and for that reason is not bound by it. We decline to so hold. The specific use to which it is intended by public officials that public moneys shall be applied is always of concern to those upon whom taxation rests the burden of the expenditure. In the matter of bond issues authorized by the vote of the citizenship affected, in the submission of the proposition the law encourages, rather than frowns upon, a full and definite statement of their purpose. The location of an expensive public improvement dependent upon such bond issues is frequently of as prime importance as its construction. In such cases it is only fair to the voters in the election called to determine the matter to inform them in advance of the intended location, so that the actual merits of the given proposal, into which the question of location may largely enter, shall decide the contest. When this is done, the location is a part of the vote and is entitled to an equivalent protection. We can perceive nothing in such a course that either trenches upon or exceeds the authority possessed in these matters by commissioners' courts or municipal bodies, or that amounts, as is contended, to a surrender of their duty into other hands."

■ A reading of the part of the opinion just quoted will demonstrate that it was there held that when the location of the two bridges there involved was included in the petition, order, and notices above mentioned such location became a part of the vote and was entitled to an equivalent protection. Certainly the same principle of law is here involved. By the express terms of Section 9, of Article VIII, of our Constitution, the Legislature was duly authorized to enact the statutes in force at the time the qualified tax-paying voters of San Saba County, by majority vote, levied the tax here involved. The express language of such statutes contained the stipulation against issuing bonds, and the right to vote off the tax every two years.

Certainly these provisions became a part of the very vote it-self, and are entitled to equivalent protection.

Because we are of the opinion that the Attorney General has acted lawfully in refusing to approve these bonds, the motion to file petition for mandamus is in all things overruled.

Opinion delivered July 14, 1937.