OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

August 1, 2001

The Honorable Ori T. White
District Attorney
112th Judicial District
P.O. Drawer 160
107 East 4th Street
Fort Stockton, Texas 79735

Opinion No. JC-0400

Re: Whether the Industrial Development Corporation of the City of Sonora may expend sales and use tax proceeds to fund a "nature/birding center" or a public park that was not specifically approved by the voters (RQ-0355-JC)

Dear Mr. White:

When the law requires that voters approve a tax, proceeds of the tax may only be used for the purposes expressly represented to the voters. Under section 4B of the Development Corporation Act of 1979 (the "Act"), an eligible city may collect a sales and use tax, if approved by the city's voters, to be used by a city-created industrial development corporation to fund authorized projects. Section 4B of the Act does not generally require the city or the development corporation to obtain voter approval of a specific project at an election. You ask whether the Industrial Development Corporation of the City of Sonora, Texas (the "Sonora IDC") may expend section 4B tax proceeds for a "nature/birding center" or a public park that was not specifically approved by the voters when they authorized collection of the sales tax.[1] We conclude that the Sonora IDC is not precluded, as a matter of law, from using the tax proceeds for the proposed "nature/birding center" or public park project because the proposed project was within the scope of the purposes for which the voters approved the sales and use tax: The particular tax election ballot language indicated that the tax proceeds would be used for projects authorized by section 4B; and on the date of the tax election, the statute authorized public park projects. Additionally, the city published notice of the proposed project as required by section 4B, and no subsequent voter petition requesting an election on the project was submitted.

To provide a legal context for your question, we begin by reviewing the Act's provisions with respect to use of the section 4B tax proceeds. The Development Corporation Act of 1979, TEX. REV. CIV. STAT. ANN. art 5190.6 (Vernon 1987 & Supp. 2001), generally authorizes a city, county, or a district to create an industrial development corporation to finance the cost of authorized "projects." *See id.* §§ 2 (4), (11), (13); 4A; 4B; 21; 23 (a)(1)-(7) (Vernon Supp. 2001). In particular,

---

[1]Letter from Honorable Ori T. White, District Attorney, 112th Judicial District, to Honorable John Cornyn, Texas Attorney General (Feb. 16, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

section 4B of the Act authorizes an eligible city to create an industrial development corporation governed by that section, *see id.* § 4B(b), and authorizes the city to levy a sales and use tax for the benefit of the corporation, *see id.* § 4B(d), but only if approved by a majority of the voters at an election called for that purpose, *see id.* Other than the rate of the tax, section 4B does not generally specify the contents of the tax election proposition or ballot to be submitted to the voters. *See id.* *But see* Act of May 25, 2001, 77th Leg., R.S., ch. 1105, § 2, 2001 Tex. Sess. Law Serv., WL TX LEGIS 1105 (2001) (to be codified as an amendment to TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-5)) (House Bill 2379 amending Act and section 4B to require that "ballot proposition at the election to adopt a sales and use tax . . . must clearly describe" water supply facilities and water conservation programs). Tax proceeds may be used to fund the cost of "projects." *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(g)(1), (2) (Vernon Supp. 2001). Specifically, they may be used to "pay the costs of projects of the types added to the definition of that term by Subsection (a) of this section [4B]." *Id.* § 4B(g)(1). Subsection (a) includes within the term "project," the following:

> land, buildings, equipment, facilities, and improvements . . . found by the board of directors to:
>
> (A) be required or suitable for use for professional and amateur (including children's) sports, athletic, entertainment, tourist, convention, and *public park purposes* and events, including stadiums, ball parks, auditoriums, amphitheaters, concert halls, learning centers, *parks and park facilities*, open space improvements . . . ."

*Id.* § 4B(a)(2)(A) (emphasis added).

Generally, a development corporation must obtain voter approval of a specific project only in limited circumstances, *i.e.,* when the project is, in effect, challenged and was not specifically provided for on the ballot for the original sales tax election. *See id.* § 4B(a-1); *see also* Tex. Att'y Gen. LO-98-062 (construing similar language in section 4B(a-2) to require city to call election and obtain voter approval for use of tax proceeds to pay project maintenance and operation costs if petition submitted unless "a proposition in a prior election *expressly provided*" for such use) (emphasis in original). *But see* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-3)(2) (Vernon Supp. 2001) (requiring approval by majority of voters for specific sports venue projects "clearly described on the ballot"). Subsection (a-1) of section 4B provides that:

> A corporation may undertake a project under this section unless within 60 days after first publishing notice of a specific project or type of general project the governing body of the city receives a petition from more than 10 percent of the registered voters of the city where the petition requests that an election be held before that specific project or that general type of project is undertaken. An election is not required to be held after the submission of a petition if

> the qualified citizens of the city have previously approved the undertaking of a specific project or that general type of project at an election called for that purpose by the governing body of the city or in conjunction with another election required to be held under this section.

*Id.* § 4B(a-1); *see also id.* § 4B(n) (before expending funds, corporation must hold at least one public hearing on project).

Under subsection (a-1), the city must first publish a notice of a particular project or that general category of projects whenever a development corporation proposes to undertake a particular project. *See id.* § 4B(a-1); *see also* Tex. Att'y Gen. LO-98-062, at 2 (construing similar language of subsection (a-2) to require publication of notice that tax proceed will be used to pay maintenance and operation costs of project). If the city then receives a petition requesting an election on the project "within 60 days after first publishing" the notice, it must call such an election and obtain the voters' approval before undertaking the project unless the particular project or that general type of project was specifically approved by the voters at a prior election. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-1) (Vernon Supp. 2001); *see also* Tex. Att'y Gen. LO-98-062, at 2-3 (construing subsection (a-2) to require city to call election on use of tax proceeds for maintenance and operation costs on receipt of petition requesting election unless prior election proposition expressly provided for such use of tax proceeds). But, if no such petition is submitted, the city or the development corporation may, under this provision, proceed with the project.

In short, section 4B requires that the sales and use tax be approved by the voters, but does not generally require that specific projects to be funded with the tax proceeds be approved by the voters. For most projects, voter approval is required only if the requisite number of voters submit a petition requesting such an election and the specific project or that specific type of project has not been approved previously. While there are particular types of projects that the legislature has indicated must always be approved by the voters at an election before a development corporation may undertake them, public parks and park facilities are not one of them. *See, e.g.,* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-3) (Vernon Supp. 2001) (requiring voter approval for specific sports venue projects "clearly described on the ballot"); Act of May 25, 2001, 77th Leg., R.S., ch. 1105, § 2, 2001 Tex. Sess. Law Serv., WL TX LEGIS 1105 (2001) (to be codified as an amendment to TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-5)) (House Bill 2379 requiring that "ballot proposition at the election to adopt sales and use tax . . . must clearly describe" water supply facilities and water conservation programs).

With the above statutory background, we turn to your question and the facts prompting it. You inform us that on May 2, 1998, the voters of the City of Sonora approved the adoption of a one-half of one percent sales and use tax and the purposes for which the tax proceeds would be used; those purposes did not specifically include a "nature/birding center" or a public park project that the

Sonora IDC proposes to finance with the tax proceeds. *See* Request Letter, *supra* note 1 (Memo at 1). The proposition submitted to the voters provided as follows:

> The adoption of an additional one-half of one percent sales and use tax within the City pursuant to the provisions of Article 5190.6, V.A.T.C., with the proceeds thereof to be used and applied in the manner and *to the purposes authorized by Section 4B of the Act, including but not limited* to public facility improvements, commercial facilities, infrastructural improvements, new and expanded business enterprises, and other related improvements, facilities to furnish water to the general public, sewage and solid waste disposal facilities and maintenance and operating costs associated with all of the above projects.

Request Letter, *supra* note 1 (Exhibit A) (emphasis added). In 1999, the City published notice of the proposed "nature/birding center" or public park project in accordance with subsection 4B(a-1). *Id.* (Memo at 1). The voters did not challenge the project by submitting a petition requesting an election on the project. *Id.*

You ask whether the Sonora IDC may use the voted tax "to fund a project that would be a tourism related improvement, specifically a "nature/birding center" or public park, when this use of the tax proceeds was not stated on the ballot, but notice of the proposed use was published and no petition was received by the governing body." *Id.* You additionally ask: "While there does not appear to be statutory authorization for broadening the uses of Section 4B tax, if a proposed use is not challenged by citizens, is the use allowed?" *Id.* (Memo at 2). You appear concerned that while the section (a-1) procedural requirements have been met here, the "nature/birding center" or public park is beyond the scope of the purposes for which the City of Sonora voters approved the sales and use tax. In other words, we understand you to ask whether using the tax proceeds for the proposed project would violate the City's "contract with the voters."

In the leading "contract with the voters" case, *San Saba County v. McCraw*, 108 S.W.2d 200 (Tex. 1937), the Texas Supreme Court ruled that the statutory conditions and safeguards surrounding a tax voted upon by the people pursuant to the constitution and enabling legislation become a part of the election itself. *See id.* at 203. Such conditions and safeguards are a contract with the voters, and any attempt to substantially alter the rights and expectations of the voters will be treated as a violation of the constitutional provision authorizing the tax and of article I, section 16 of the Texas Constitution, which prohibits laws impairing the obligation of contracts. *See id. Compare id. with San Antonio River Auth. v. Shepperd*, 299 S.W.2d 920, 924-25 (Tex. 1957) (holding that 30-year contractual pledge of flood-control taxes did not violate contract with voters because county's existing authority to contract on its general credit for flood-control purposes was also part of voter contract, thus, voter's statutory right to repeal or reduce tax was limited by the county's contracting authority).

The *San Saba* rule is grounded in, and applies to, election orders and propositions. Texas courts have held that the express terms of the order calling an election, at which voters are asked to approve financial undertakings of a governmental body relating to the purposes for which funds shall be used, become a solemn contract with the voters who are entitled to receive substantially all of the benefits and security of that contract. *See, e.g., Fletcher v. Howard*, 39 S.W.2d 32 (Tex. 1931) (bond proceeds may not be diverted from highway described in county order and as it existed on date of election); *Black v. Strength*, 246 S.W. 79 (Tex. 1922) (bond proceeds may not be diverted from improvements designated in order adopted subsequent to election order but prior to election); *Robbins v. Limestone County*, 268 S.W. 915, 919 (Tex. 1925) (taxes levied and collected for particular purpose may not be diverted to purposes other than for which they were voted); *Moore v. Coffman*, 200 S.W. 374 (Tex. 1918) (bond financed bridge must be constructed at location designated in election order). *See also* Tex. Att'y Gen. Op. Nos. JC-0127 (1999) at 2, JM-1276 (1990) at 9; Tex. Att'y Gen. LO-98-060, at 2; LO-92-071, at 3. Additionally, representations of the governing body outside of its formal election orders or resolutions may also give rise to a contract with the voters regarding the use of funds. *See, e.g., Devorsky v. La Vega Indep. Sch. Dist.*, 635 S.W.2d 904, 908 (Tex. App.–Waco 1982, no writ) (statements of school representatives regarding specific school building sites made before election bound school district notwithstanding that it was not "formal" action); *Inverness Forest Improvement Dist. v. Hardy St. Investors*, 541 S.W.2d 454, 460 (Tex. Civ. App.– Houston [1st Dist.] 1976, writ ref'd n.r.e.) (letter reflecting water district improvements had effect of pledging to voters that those improvements would be made with bond proceeds).

Assuming for the purposes of this opinion that neither the governing body of the City nor of the Sonora IDC made any representations limiting the use of the sales tax proceeds beyond that stated in the proposition, we conclude that use of the sales tax proceeds for the proposed "nature/birding center" or public park project would not, as a matter of law, violate the City's contract with its voters. While the specific proposed project was not approved by the voters at the 1998 sales tax election, it was within the scope of the purposes for which the voters approved the tax.

First, the proposition indicates that the tax proceeds may be used for any project authorized by section 4B. It states that the sales and use tax proceeds will "be used and applied in the manner and *to the purposes authorized by Section 4B of the Act, including but not limited to*" the projects listed. Request Letter, *supra* note1 (Exhibit A-Ballot Proposition) (emphasis added). By its terms, the proposition does not limit the use of the tax proceeds to the specified projects. Rather, it affirmatively indicates that projects other than those itemized may be funded with the tax proceeds to the extent authorized by section 4B.

Significantly, at the time of the election – May 1998 – section 4B authorized public park projects. Although the legislature has expanded the definition of "project" almost every session since the Act was first adopted in 1979, the language of section 4B(a)(2)(A), which includes parks and parks facilities within the definition of project, was adopted in 1991. *See* Act of March 21, 1991, 72nd Leg., R.S., ch. 11, 1991 Tex. Gen. Laws 37 (enacting section 4B). Given the language

of the Sonora proposition – that the tax proceeds would "be used and applied in the manner and *to the purposes authorized by Section 4B of the Act, including but not limited to*" the projects listed – the authorized parks purposes, by reference, also became a part of the contract with the City's voters. *Cf. Shepperd*, 299 S.W.2d at 924-25 (county's existing express and implied authority to contract on its general credit for flood-control purposes was also part of contract with voters; voter's statutory right to repeal or reduce tax at any time was limited by the county's contracting authority); *San Saba*, 108 S.W.2d at 203 (laws in force and effect on election date become part of contract with voters).

That the proposed "nature/birding center" or public project is within the scope of the purposes for which the voters approved the sales and use tax does not end our inquiry as to whether the Sonora IDC may undertake the proposed project. Not only must a project proposed to be funded with the sales tax proceeds be within the scope of the purposes for which the sales tax was previously approved, *see* discussion *supra* at 4-5, it must also comply with section 4B(a-1). *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a-1) (Vernon Supp. 2001). Subsection (a-1) imposes an additional referendum requirement with respect to section 4B projects. *See id.* § 4B(a-1). A specific project or a specific type of project that was not previously approved by the voters must be so approved at a subsequent election if challenged by the voters. *See id.* This specific project or specific type of project was not previously approved. The City published notice of the proposed project in accordance with section 4B(a-1), but no petition requesting the City to call an election to approve the proposed project was submitted. *See* Request Letter, *supra* note 1 (Memo at 1). The City would have been required to call an election and obtain specific voter approval of the proposed project before proceeding with it, if such a petition signed by more than ten percent of the City's registered voters had been submitted. *See* TEX. REV. CIV. STAT. ANN. art. 5190. 6, § 4B(a-1) (Vernon Supp. 2001). Because the proposed project was consistent with the original sales tax election ballot and the city complied with section 4B(a-1), the Sonora IDC may proceed with the proposed project.

## S U M M A R Y

The Industrial Development Corporation of the City of Sonora, Texas is not precluded, as a matter of law, from using sales and use tax proceeds for a "nature/birding center" or a public park project that was not specifically approved by the voters when they authorized collection of the tax because it was within the scope of the purposes for which the voters approved the sales and use tax: The particular tax election ballot language submitted to the voters indicated that the tax proceeds would be used for projects authorized by section 4B of the Development Corporation Act of 1979; and, on the date of the tax election, the statute authorized public park projects. Additionally, the city published notice of the proposed project as required by section 4B, and no subsequent voter petition requesting an election on the project was submitted.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee