

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

March 27, 2003

The Honorable Susan Combs, Commissioner
Texas Department of Agriculture
P.O. Box 12847
Austin, Texas 78711

Opinion No. GA-0049

Re: Whether the Texas Corn Producers Board may collect an assessment on corn ensilage (RQ-0619-JC)

Dear Commissioner Combs:

You ask about the authority of the Texas Corn Producers Board ("the Board") to collect an assessment on corn ensilage.[1]

The Board is an agricultural commodity producers board governed by chapter 41 of the Agriculture Code. Under chapter 41, a nonprofit organization representing producers of an agricultural commodity may petition the Commissioner of Agriculture ("the Commissioner") "for certification as the organization authorized to conduct an assessment referendum and an election of a commodity producers board." TEX. AGRIC. CODE ANN. § 41.011(a) (Vernon 1995).[2] If, on the basis of testimony presented at the public hearing, the Commissioner determines that the organization is representative of producers of the agricultural commodity and that the petition conforms to chapter 41, the Commissioner shall certify that the organization is representative of the producers of the commodity and is authorized to conduct the assessment referendum and board election. See id. § 41.012(b).

Chapter 41 provides that the organization may conduct a referendum of the producers of the agricultural commodity on the proposition of whether the producers shall levy an assessment on themselves "to finance programs of research, disease and insect control, predator control, education, and promotion designed to encourage the production, marketing, and use of the commodity" and may conduct an election of members to a commodity producers board for the commodity. Id. § 41.021.

---

[1]Letter from Honorable Susan Combs, Commissioner, Texas Department of Agriculture, to Honorable John Cornyn, Texas Attorney General (Sept. 30, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2]See also TEX. AGRIC. CODE ANN. § 41.002(1) (Vernon 1995) ("'Agricultural commodity' means an agricultural, horticultural, viticultural, or vegetable product, bees and honey, planting seed, rice, livestock or livestock product, or poultry or poultry product, produced in this state, either in its natural state or as processed by the producer. The term does not include flax or cattle."), (6) ("'Producer' means a person engaged in the business of producing or causing to be produced for commercial purposes an agricultural commodity. The term includes the owner of a farm on which the commodity is produced and the owner's tenant or sharecropper.").

A board is established if the Commissioner "finds that two-thirds or more of those voting in the election voted in favor of the referendum proposition or that those voting in favor of the proposition produced at least 50 percent of the volume of production of the commodity during the relevant production period," *id.* § 41.031 (standards for certification), and "certifies adoption of [the] referendum proposition." *Id.* § 41.051.

Significantly, article XVI, section 68 of the Texas Constitution, which authorizes the legislature to provide for agricultural commodity assessments such as the one at issue here, requires these referenda. *See* TEX. CONST. art. XVI, § 68 ("The legislature may provide for the advancement of food and fiber in this state by providing representative associations of agricultural producers with authority to collect such refundable assessments on their product sales as may be approved by referenda of producers. All revenue collected shall be used solely to finance programs of marketing, promotion, research, and education relating to that commodity."). Prior to the adoption of article XVI, section 68, the Texas Supreme Court had held that an assessment collected by an agricultural commodity producers board under the statutory predecessor to chapter 41 of the Agriculture Code constituted an occupation tax on an agricultural pursuit in violation of article VIII, section 1 of the Texas Constitution. *See Conlen Grain and Mercantile, Inc. v. Tex. Grain Sorghum Producers Bd.*, 519 S.W.2d 620 (Tex. 1975). For this reason, an assessment must be adopted under and in conformance with article XVI, section 68 in order to pass constitutional muster.

Subchapter D of chapter 41 establishes the powers and duties of an agricultural commodity producers board. A board "is a state agency" for many purposes,[3] and it may adopt rules consistent with the purposes of chapter 41. *See* TEX. AGRIC. CODE ANN. § 41.058(b) (Vernon 1995). Under section 41.058(d), a board "shall set the rate of the assessment," but the "rate may not exceed the maximum established in the election authorizing the assessment or a subsequent election establishing a maximum rate." *Id.* § 41.058(d). Section 41.084 authorizes a board, at any board election, to submit to the voters a proposition to increase the maximum rate of assessment. *See id.* § 41.084 ("The proposition is approved and the new maximum rate is in effect if two-thirds or more of those voting vote in favor of the proposition or if those voting in favor of the proposition produced at least 50 percent of the volume of production of the commodity during the relevant production period."). Generally, agricultural commodity producers do not pay the assessments directly, but rather the processors[4] of the commodity deduct assessments from the purchase price of the commodity and remit them to the board. *See id.* § 41.081.

You inform us that the Board was established pursuant to a referendum of corn producers in 1980. Pursuant to the referendum, the corn producers approved a proposition "to assess themselves

---

[3]*See id.* § 41.052(a) (Vernon Supp. 2003) (board is state agency for indemnification purposes and is exempt from taxation to same extent as other state agencies), (b) (board is governmental unit for purposes of section 101.001, Civil Practice and Remedies Code and chapters 551 and 552, Government Code).

[4]*See id.* § 41.002(5) (Vernon 1995) ("'Processor' means a person within this state who: (A) is a purchaser, warehouseman, processor, or other commercial handler of an agricultural commodity; (B) processes planting seeds; or (C) is the mortgagee of an agricultural commodity if the mortgage did not cover the commodity in its state as a growing crop and if the mortgage was executed at a time when the commodity was ready for marketing.").

not to exceed ½ cent per bushel to be collected at the point of first sale, to finance programs of research, development, marketing and use of Texas corn." *See* Request Letter, *supra* note 1 (Attachment, Exhibit I). The 1980 referendum was limited to seven counties. *See id.* In 1990, the Board held a second referendum that extended its jurisdiction to all Texas counties, but that did not change the terms of the assessment. *See id.* (Attachment, Exhibit II).

You also inform us that since its inception in 1980, the Board has assessed dry kernel corn but has not assessed corn ensilage, which you describe as a substance that "includes kernels of corn as an ingredient, but also includes other substances, such as corn plant parts, whatever else is picked up in the field, and water." *Id.* at 2. Dry kernel corn is sold by the pound or bushel whereas corn ensilage "is sold as a wet substance by the ton." *See id.* The dry kernel corn assessment is collected at the warehouse or elevator, where it is sold. "[E]nsilage is generally sold directly from the farm to dairies and other cattle-feeding operations." *Id.*

The Board would like to begin collecting an assessment on corn ensilage without holding a referendum to approve the assessment. *See id.* at 1. Accordingly, you ask "(1) whether or not 'corn ensilage' may be included in the definition of 'corn' for purposes of implementing the current . . . producer assessment on corn; and (2) whether such an assessment on 'corn ensilage' may be collected without conducting another grower referendum seeking grower approval of the assessment." *Id.*

We construe a referendum proposition in light of the intent of the voters who approved it. The constitution requires that the assessment must be approved by a referendum of corn producers, as does chapter 41 of the Agriculture Code. *See* TEX. CONST. art. XVI, § 68 (authorizing assessments "as may be approved by referenda of producers"); TEX. AGRIC. CODE ANN. §§ 41.058(d), 41.084 (Vernon 1995). The constitutional and statutory "conditions and safeguards surrounding the tax voted at the time of the election thereon became a part of the very election itself." *San Saba County v. McCraw*, 108 S.W.2d 200, 203 (Tex. 1937) (citation omitted). A tax or bond proposition and constitutional and statutory conditions and safeguards are a contract with the voters, and any attempt to substantially alter the rights and expectations of the voters will be treated as a violation of the constitutional provision authorizing the tax and of article I, section 16 of the Texas Constitution, which prohibits laws impairing the obligation of contracts. *See id.*; *see also Troy Dodson Constr. Co. v. McClelland*, 993 F.2d 1211, 1216 (5th Cir. 1993) (where the electorate has approved the issuance of bonds, bond proceeds may be expended only for the purposes for which the bonds were approved); *Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) (same); Tex. Att'y Gen. Op. No. JC-0494 (2002) at 1 ("When the law requires that voters approve a tax, proceeds of the tax may only be used for the purposes approved by the voters.").

The Board was established twenty-three years ago to collect an assessment on corn to finance corn research and marketing. *See* Request Letter, *supra* note 1 (Attachment, Exhibit I). The Board has assessed only dry kernel corn for the last twenty-three years. *See id.* at 2. The fact that the Board has never assessed corn ensilage and has only recently begun to explore the possibility indicates that the voters who approved the 1980 and 1990 referenda did not consider corn ensilage "corn" within the scope of the referenda. Further supporting this conclusion is that the proposition approved by

the corn producers provides for an assessment "not to exceed ½ cent *per bushel.*" *Id.* (Attachment, Exhibit I) (emphasis added). As you have noted, corn ensilage contains materials other than corn kernels, including corn plant parts and water, and is not measured by the bushel, but rather by the ton. *See id.* at 2. As a result, corn ensilage is outside the scope of the proposition.

Because corn ensilage is not "corn" within the meaning of the referenda, the collection of an assessment on corn ensilage would "exceed the maximum [rate of assessment] established in the election authorizing the assessment," in violation of section 41.058(d). *See* TEX. AGRIC. CODE ANN. § 41.058(d) (Vernon 1995) ("The board shall set the rate of the assessment. The rate may not exceed the maximum established in the election authorizing the assessment or a subsequent election establishing a maximum rate."). Accordingly, the Board may not collect an assessment on corn ensilage unless the state's corn producers approve such an assessment in a referendum held under section 41.084. *See id.* § 41.084 (authorizing board, at any board election, to submit to the voters a proposition to increase the maximum rate of assessment).

## S U M M A R Y

Corn ensilage is not "corn" for purposes of the 1980 and 1990 referenda authorizing the Texas Corn Producers Board to collect an assessment on corn.  The Board may not collect an assessment on "corn ensilage" unless the corn producers of the state approve such an assessment in an election held under section 41.084 of the Agriculture Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee