ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 17, 2012

The Honorable Jeff Wentworth
Chair, Select Committee on
    Open Government
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0968

Re: Authority of the City of San Antonio, Bexar County, and VIA Metropolitan Transit Authority to use the proceeds of a sales and use tax for a streetcar project in light of certain representations that were made preceding an election to create an advanced transportation district (RQ-1048-GA)

Dear Senator Wentworth:

You ask about the authority of the City of San Antonio (the "City"), Bexar County (the "County"), and VIA Metropolitan Transit Authority ("VIA")[1] to use the proceeds of a sales and use tax for a streetcar project in light of certain representations that were made preceding an election to create an advanced transportation district ("ATD").[2] In three questions, you ask whether certain pre-election representations have become a part of the "contract with [the] voters" that precludes expenditures of tax proceeds on a streetcar project. Request Letter at 1, 6.

An ATD is created by a local election called by a rapid transit authority that meets certain criteria. TEX. TRANSP. CODE ANN. § 451.702 (West Supp. 2012). If approved, an ATD is created consisting of "participating units," which include the municipalities and areas in each county that voted for the proposition. Id. §§ 451.701(3), .704(a) (West 2007). Thereafter, the board of the rapid transit authority that called the election (the "Board") acts as the governing body of the ATD. Id. § 451.707(a).

Section 451.702 generally requires ATD sales and use tax proceeds to be used only for "advanced transportation and mobility enhancement purposes." Id. § 451.702(e) (West Supp. 2012). The 2004 ballot proposition that created an ATD in the San Antonio metropolitan area stated that

---

[1]VIA is a rapid transit authority governed by chapter 451 of the Transportation Code. See TRANSP. CODE ANN. § 451.001(2) (West Supp. 2012); Salvatierra v. VIA Metro. Transit Auth., 974 S.W.2d 179, 181 (Tex. App.—San Antonio 1998, pet. denied) (discussing VIA's creation and history).

[2]See Letter from Honorable Jeff Wentworth, Chair, Select Comm. on Open Gov't, to Honorable Greg Abbott, Tex. Att'y Gen. (Mar. 26, 2012), http://www.texasattorneygeneral.gov/opin ("Request Letter").

the tax proceeds would be used for "advanced transportation purposes" and does not identify specific projects. Request Letter at 2.

The statutory definition of "advanced transportation," as it appears in chapter 451, includes light rail. *See* TEX. TRANSP. CODE ANN. § 451.701(1) (West 2007) (defining "advanced transportation" to include "light rail, commuter rail, fixed guideways . . . and other advanced transportation facilities, equipment, operations, systems, and services . . . ."). You wish to know, however, whether VIA and the City made a contract with the voters excluding light rail from the permissible uses of ATD funds. Request Letter at 1, 6. You note that a VIA election brochure published before the election expressly stated that ATD funds would not be used to fund light rail or toll roads and that only one-half of the tax revenue would be used for public transit transportation projects. *Id.* at 3. You also refer to a news account reporting that the Board had adopted a resolution forswearing the use of ATD tax proceeds for a light rail project. *Id.* In light of these statements and representations, you ask first whether the City of San Antonio and VIA entered into a contract with the voters prohibiting the use of ATD funds for light rail. *Id.* at 1, 6. Second, you ask whether representations in the brochure that only half of the tax revenue would be used for a transportation project preclude VIA and the County from funding a proposed downtown streetcar project. *Id.* Pertinent to both questions is your assertion that "[a]t the time of the election, [the terms] light rail and streetcars were synonymous," suggesting that the public would have understood representations about light rail to preclude expenditures on a downtown streetcar project. *Id.* at 3.

The "contract with the voters" doctrine derives from article I, section 16 of the Texas Constitution, which prohibits laws that impair the obligation of contracts. TEX. CONST. art. I, § 16; *San Saba Cnty. v. McCraw*, 108 S.W.2d 200, 202–04 (Tex. 1937). Generally, the express terms of an order submitting a proposition for a tax or bond election that identify the purposes for which the proceeds are to be used become a contract with the voters. *Id.* (concerning a tax election); *Black v. Strength*, 246 S.W. 79, 80–81 (Tex. 1922) (concerning a bond election). When the election order does not identify a specific project, the governing body has some discretion in expending funds. *Barrington v. Cokinos*, 338 S.W.2d 133, 142–43 (Tex. 1960). However, even when language in the election order is general and appears to grant broad authority, the governing body may issue other preelection orders that limit its discretion to expend funds, in which case the collateral orders become, in effect, a part of the contract with the voters. *See Fletcher v. Ely*, 53 S.W.2d 817, 818–20 (Tex. Civ. App.—Amarillo 1932, writ ref'd) (commissioners court's preelection order identifying specific road to be improved with bond proceeds was binding). When determining the terms of a contract with the voters, election orders and resolutions should be construed in light of the particular circumstances, which will typically involve fact questions about the electorate's understanding. *Id.* at 818 (considering specific facts to determine the understanding of the voters).

We first consider the election brochure that you indicate was prepared by VIA. You do not provide any information indicating that the brochure was an official action of either the Board, the City, or the County. There is a split of authority about whether any representations other than official actions of the governing body can ever become a part of the contract with the voters. *Compare Inverness Forest Improvement Dist. v. Hardy St. Investors*, 541 S.W.2d 454, 460 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (determining that a letter signed by all governing

board members asking district residents to approve a bond proposition for a specified purpose was binding on the district, even though it did not constitute formal action), *with Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670, 672, 676–77 (Tex. App.—Dallas 2002, pet. denied) (determining that a city's contract with voters concerning a waterway project consisted of the bond proposition itself and did not include a pamphlet about the project prepared by city staff). *See also* Tex. Att'y Gen. Op. No. GA-0481 (2006) at 3 (noting conflict of authority). A court's resolution of this question would likely depend on the factual circumstances existing at the time the pamphlet was prepared. Consequently, we cannot advise whether a court would determine that representations in the brochure constitute a contract with the voters. *See* Tex. Att'y Gen. Op. No. GA-0459 (2006) at 3–4 (noting that an attorney general opinion cannot resolve disputed fact questions).

The VIA resolution described in the newspaper account could constitute official action of the Board. A board's order or resolution made after an order calling an election but before the election is held can limit the board's discretion, becoming a part of the contract with the voters. *See Fletcher*, 53 S.W.2d at 818–20. However, while you inform us that the Board resolved to not use ATD funds for light rail, you have not provided the resolution itself. Courts do not construe a phrase of an order or resolution in isolation. *See City of Laredo v. Villarreal*, 81 S.W.3d 865, 868 (Tex. App.—San Antonio 2002, no pet.) (courts construe ordinances as a whole and in context). Moreover, the public's understanding of the permissible uses of the tax in light of the resolution would likely involve disputed questions of fact. *See Fletcher*, 53 S.W.2d at 818–21 (reviewing the specific facts pertaining to the voters' likely intent in a bond election because contractual intent must be examined in light of particular circumstances). These disputed questions of fact and contract interpretation prevent us from advising you about whether the referenced VIA Board resolution or the election brochure have become a part of the contract with the voters, or how a court might construe any such representations. *See* Tex. Att'y Gen. Op. No. GA-0481 (2006) at 3–4 (concluding that whether representations limiting the use of certificates of obligation proceeds were made and whether voters may have relied upon them are issues of fact that cannot be determined in an attorney general opinion). Consequently, we are unable to answer your first two questions.

Your third question is "[w]hether VIA and Bexar County may use 25 percent of the ATD sales tax proceeds for the streetcar project that is designated [by law] 'as the local share of the state or federal grants.'" Request Letter at 1, 7. By statute, the governing body of an ATD must use 25 percent of a sales and use tax to provide the local share of a state or federal grant "for advanced transportation or mobility enhancement purposes in the territory of the district." TEX. TRANSP. CODE ANN. § 451.702(i) (West Supp. 2012). The 2004 ballot proposition states that 25 percent of the sales and use tax proceeds are to be "used as the local share for state and federal grants for improved highways, transportation infrastructure designed to improve mobility, and other advanced transportation or mobility enhancement purposes within the District." Request Letter at 2. Whether using such proceeds for a streetcar project would comport with the statute and the ballot proposition would also require the resolution of fact issues that cannot be determined in an attorney general opinion.

## S U M M A R Y

Determining the extent to which representations and statements made prior to an election creating an advanced transportation district may have become a part of the contract with the voters and construing the terms of such representations and statements involve questions of fact and contract construction not amenable to the opinion process.

Twenty-five percent of the proceeds of an advanced transportation district sales and use tax must be used as the local share of a state or federal grant according to law for advanced transportation or mobility enhancement purposes in the territory of the district.  Whether using such proceeds for a streetcar project would comport with this requirement would involve questions of fact that cannot be determined in an attorney general opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chairman, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee